STATE of Wisconsin, Plaintiff-Respondent,

v.

Stephen D. HARMON, Defendant-Appellant.†

Court of Appeals

*No. 2005AP2480–CR. Submitted on briefs June 12, 2006.*
*—Decided September 28, 2006.*

2006 WI App 214

(Also reported in 723 N.W.2d 732.)

† Petition to review denied 1/9/07.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Tim Provis*, Port Washington.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *David J. Becker*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Dykman, Vergeront, JJ.

¶ 1. VERGERONT J. Stephen D. Harmon appeals a judgment of conviction for violating Wisconsin's "hit-and-run" statute, WIS. STAT. § 346.67(1).[1] Harmon contends the circuit court erroneously instructed the jury on the meaning of the word "accident" by not limiting the definition to unintentional acts. We conclude the word "accident" in § 346.67(1) means "an unexpected, undesirable event" and may encompass intentional conduct. Harmon also contends that, if we construe "accident" in § 346.67(1) to include intentional conduct, then the reporting requirements infringe his Fifth Amendment privilege against self-incrimination. We conclude that, under *California v. Byers*, 402 U.S. 426 (1971), § 346.67(1) does not contravene the Fifth Amendment, even if it applies to accidents involving intentional conduct. Accordingly, we affirm the judgment of conviction.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

## BACKGROUND

¶ 2. On May 16, 2004, Harmon was involved in an altercation that resulted in the death of William A. Busch. According to the trial testimony, on the night of the incident, Busch, a hotel security guard, suspected Harmon, another hotel employee, of stealing food from the hotel kitchen. When Harmon attempted to leave the hotel for the night, Busch confronted him in the hotel parking lot. Initially, Busch stood in front of the driver-side door of Harmon's car, preventing Harmon from entering. Harmon then went around to the passenger side, entered the car and started it. At this point, Busch opened the driver-side door, leaned in and began grabbing Harmon and pulling on the levers of the steering column. Harmon put the car in reverse and backed up about ten or fifteen feet until the car hit a curb. Busch fell out of the car and Harmon put the car in drive and drove away.

¶ 3. Police officers were called to the scene to investigate the theft and found Busch's body. A pathologist testified the principal cause of death was a crushing of the chest that tore the aorta. The pathologist further testified that Busch's injuries were consistent with having been run over by a car.

¶ 4. Harmon was charged with violating WIS. STAT. § 346.67(1) (the "hit-and-run" statute),[2] and WIS. STAT. § 940.06, second-degree reckless homicide.

---

[2] WISCONSIN STAT. § 346.67(1) provides:

**Duty upon striking person or attended or occupied vehicle. (1)** The operator of any vehicle involved in an accident resulting in injury to or death of any person or in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every

¶ 5. The case was tried to a jury. The jury was instructed on second-degree reckless homicide as well as the lesser-included offense of homicide by negligent operation of a vehicle, Wis. Stat. § 940.10.[3] On the hit-and-run count, the jury was instructed that one element was that "[t]he defendant knew that the vehicle he was operating was involved in an accident involving a person." During deliberations, the foreman posed this question to the court: "The defendant knew that the vehicle he was operating was involved in an

event shall remain at the scene of the accident until the operator has fulfilled the following requirements:

(a) The operator shall give his or her name, address and the registration number of the vehicle he or she is driving to the person struck or to the operator or occupant of or person attending any vehicle collided with; and

(b) The operator shall, upon request and if available, exhibit his or her operator's license to the person struck or to the operator or occupant of or person attending any vehicle collided with; and

(c) The operator shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person.

Wisconsin Stat. § 346.74(5) provides the penalties for violations of § 346.67(1):

(5) Any person violating any provision of s. 346.67(1):

. . . .

(d) Is guilty of a Class D felony if the accident involved death to a person.

[3] Wisconsin Stat. § 940.10 provides:

**Homicide by negligent operation of a vehicle. (1)** Whoever causes the death of another human being by negligent operation or handling of a vehicle is guilty of a Class G felony.

accident involving a person. Can you please thoroughly explain or define the term 'accident'? I'm questioning whether or not what happened in this case can be legally defined as an 'accident'?" (Emphasis in original.) The court responded to the jury's note with the following supplemental instruction:

> Your question contains 2 parts. As to whether or not what happened in this case can be legally defined as an "accident" is for you to decide.
>
> As to the definition of the word "accident," you should rely on your common sense and everyday understanding of the word.
>
> A dictionary definition, not a legal definition, refers to an "accident" as an incident that causes injury, loss, suffering, or death occurring outside of the usual course of events.

¶ 6. The jury returned a verdict of guilty on the hit-and-run offense and on the lesser-included offense of homicide by negligent operation of a vehicle.

## ANALYSIS

¶ 7. On appeal, Harmon makes two arguments. First, Harmon contends that the circuit court erred in giving the supplemental instruction on the meaning of "accident" in WIS. STAT. § 346.67(1). The correct definition, according to Harmon, is "lack of intention," a narrower definition than that given by the court. If the jury had been given this narrower definition, Harmon asserts, it might well have decided that he acted with intention, there was thus no accident, and he therefore could not be convicted of violating § 346.67(1). Second, Harmon contends that, if "accident" in § 346.67(1) does include intentional conduct, then the reporting require-

ments constitute compelled testimony against himself and violates the Fifth Amendment.

I. Meaning of "Accident" in Wis. Stat. § 346.67(1)

¶ 8. The circuit court has broad discretion in instructing a jury. *Fischer v. Ganju*, 168 Wis. 2d 834, 849, 485 N.W.2d 10 (1992). We affirm the circuit court's choice of jury instructions if the instructions accurately state the law. *Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶ 42, 281 Wis. 2d 173, 696 N.W.2d 194. We review de novo jury instruction issues that involve definitions of statutory words. *See State v. Neumann*, 179 Wis. 2d 687, 699, 508 N.W.2d 54 (Ct. App. 1993).

¶ 9. Harmon argues the essence of the word "accident," as it is understood by the ordinary person, is an unintended event. Harmon bases his argument in large part on *Doyle v. Engelke*, 219 Wis. 2d 277, 580 N.W.2d 245 (1998), a case in which the supreme court addressed the meaning of "accident" in the context of an insurance policy. The issue in *Doyle* was whether negligent supervision of employees constituted an "event" for insurance coverage purposes; "event" was defined in the policy as "an accident," but "accident" was not defined. *Id.* at 289. Because terms in insurance policies are given their common, everyday meaning, the *Doyle* court consulted a dictionary, and defined "accident" as " '[a]n unexpected, undesirable event' or 'an unforeseen incident' which is characterized by a 'lack of intention.' " *Id.* (citing THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 11 (3d ed. 1992)). The *Doyle* court concluded that, applying this meaning, the alleged negligent acts were an event. *Id.* at 290. Harmon argues that, under *Doyle*, the common meaning of "accident" includes only conduct characterized by a lack of inten-

tion. The State responds that "accident" in the context of the hit-and-run statute includes events caused by intentional conduct.

¶ 10. When construing a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. We do so in part because words often have multiple meanings and the applicable definition depends upon the context in which a word is used. *See id.*, ¶¶ 48–49. If this process of analysis yields a plain meaning, there is no ambiguity and we apply that plain meaning. *Id.*, ¶ 46.

¶ 11. Here, the parties agree that, because "accident" is not defined by statute, it must be given its ordinary meaning. *Id.*, ¶ 45. The common meaning of a word may be ascertained by resort to a dictionary. *See State v. Denis L.R.*, 2005 WI 110, ¶ 40, 283 Wis. 2d 358, 699 N.W.2d 154. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000) provides several definitions for "accident":

> **1.a.** An unexpected, undesirable event: *car accidents on icy roads*. **b.** An unforeseen incident: *went to*

*college in England by happy accident.* **c.** An instance of involuntary urination or defecation in one's clothing. **2.** Lack of intention; chance: *ran into an old friend by accident.* **3.** *Logic.* A circumstance or an attribute that is not essential to the nature of something.

¶ 12. Because "accident" has multiple dictionary definitions, we look at the context in which the word is used to determine which is the applicable meaning. *See Kalal*, 271 Wis. 2d 633, ¶ 46. We agree with the State that, because *Doyle* addressed the meaning of "accident" in a different context—an insurance contract—it is not dispositive of the meaning in Wis. Stat. § 346.67(1).

¶ 13. Being "involved in an accident" under Wis. Stat. § 346.67(1) broadly describes an event involving a motor vehicle that results in property damage, bodily injury, or death. The meaning of "accident" in this context is aptly articulated by the definition in 1.a.: "an unexpected, undesirable event." For purposes of this discussion, the definition in 1.b. does not add anything to the definition in 1.a. Harmon's proposed meaning, "lack of intention," is a narrower definition than "an unexpected, undesirable event." In order to determine which meaning is applicable, we consider the purpose of the statute.[4] *See Kalal*, 271 Wis. 2d. 633, ¶¶ 48–49.

¶ 14. The "two clear purposes" of Wisconsin's hit-and-run statute are:

> (1) to ensure that injured persons may have medical or other attention with the least possible delay; and (2) to require the disclosure of information so that responsibility for the accident may be placed.

[4] The other cited dictionary definitions of "accident" are plainly inapplicable.

*State v. Swatek*, 178 Wis. 2d 1, 7, 502 N.W.2d 909 (Ct. App. 1993) (citation omitted). Given these purposes, it is not reasonable to conclude that the legislature intended to limit "accident" to incidents that occurred through the "lack of intention" of the operator of the motor vehicle. The injured person needs prompt medical attention regardless of the intention of the operator of the motor vehicle. Similarly, the need for disclosure of information in order to place responsibility for the accident exists whether the operator acted with or without intent. Limiting the meaning of the word "accident" to unintentional conduct significantly undermines the purposes of the statute and is therefore not a reasonable construction.

¶ 15. Although it is not necessary to our analysis, we note that courts in other states have rejected the precise argument advanced by Harmon and have concluded the word "accident" within the meaning of similar hit-and-run statutes includes incidents resulting from intentional conduct. Some of these courts have reasoned that it is absurd to impose the duty to report on those whose conduct is unintentional, but not on those whose conduct is intentional. *See, e.g., People v. Jimenez*, 15 Cal. Rptr. 2d 268, 275–6 (Ct. App. 1992); *State v. Parker*, 704 P.2d 1144, 1149 (Or. 1985). Others have reasoned that the focus of the hit-and-run statute is on the injured person, not on the cause of the accident. *See, e.g., State v. Silva*, 24 P.3d 477, 481–82 (Wash. Ct. App. 2001); *Gutierrez v. State,* 510 S.E.2d 570, 573–74 (Ga. Ct. App. 1998); *State v. Rodgers*, 909 P.2d 445, 447–48 (Ariz. Ct. App. 1995). *See also McGee v. State*, 815 P.2d 196, 198 (Okla. Crim. App. 1991); *People v. Martinson*, 409 N.W.2d 754, 756 (Mich. Ct. App. 1987); *State v. Smyth*, 397 A.2d 497, 499 (R.I. 1979). *But see State v. Liuafi*, 623 P.2d 1271, 1282 (Haw.

Ct. App. 1981) ("[a]n intentional attempt to murder a person by using one's vehicle as a weapon does not fit within the general, popular, usual sense of the word 'accident' ").

¶ 16. We conclude that the meaning of "accident" in Wis. Stat. § 346.67(1) is not limited to unintentional acts or events. Instead, the only reasonable meaning, when the word is considered in the context of the statute and in light of its purpose, is the broad meaning of "an unexpected, undesirable event." The circuit court's instruction is consistent with this definition and was not error. Because the circuit court accurately stated the law, there are no grounds for reversal on this point.[5]

II. Fifth Amendment Challenge

¶ 17. Harmon argues that, if we construe Wis. Stat. § 346.67(1) to include intentional conduct, as we have done, then the statute requires those who have engaged in criminal conduct to stop and give identifying information. Specifically, para. (a) of § 346.67(1) requires that the operator of the motor vehicle give his or her name, address, and vehicle registration number "to the person struck" or to the person operating, occupying, or attending any vehicle collided with; and para. (b) requires the operator, if requested, to exhibit his or her

---

[5] Harmon also argues that, under the rule of lenity, we must interpret Wis. Stat. § 346.67(1) in favor of the accused. The rule of lenity, however, comes into play only after two conditions are met: (1) the penal statute is ambiguous; and (2) the court is unable to clarify the intent of the legislature by resort to legislative history. *State v. Cole*, 2003 WI 59, ¶ 67, 262 Wis. 2d 167, 663 N.W.2d 700. Because we have concluded there is only one reasonable meaning of "accident" in § 346.67(1), the rule of lenity is not applicable.

operator's license to any of those persons, if it is available. These requirements, Harmon asserts, infringe the Fifth Amendment privilege against self-incrimination.[6] The State responds that *Byers* resolves this issue against Harmon. We agree with the State.

¶ 18. Both the United States and Wisconsin Constitutions protect persons from compelled self-incrimination. *State v. Hall,* 207 Wis. 2d 54, 67, 557 N.W.2d 778 (1997). Whether a statute violates these constitutional provisions presents a question of law, which we review de novo. *Id.* The analysis is essentially the same under both state and federal provisions. *Id.* at 68.

¶ 19. Because *Byers* is central to a resolution of this issue, we describe it in some detail before discussing Harmon's argument. Byers was charged with and convicted of two misdemeanor violations of the California Vehicle Code: illegally passing another vehicle and being involved in an accident and failing to stop and identify himself as required by the code. *Byers*, 402 U.S. at 425–26. Byers appealed the latter conviction on the ground that the reporting requirements of the California hit-and-run statute infringed his constitutional

---

[6] Harmon appears to equate intentional conduct in Wis. Stat. § 346.67(1) with criminal conduct. However, we observe that not all criminal statutes require "intent" as Harmon appears to be using the term. For example, homicide by negligent operation of a vehicle, of which Harmon was convicted, requires that "criminal negligence" cause the death. *See* Wis. Stat. § 940.10; Wis. Stat. § 939.25(2). "Criminal negligence" means "ordinary negligence to a high degree, consisting of conduct that the actor should realize creates substantial and unreasonable risk of death of great bodily harm to another." Section 939.25.

873

privilege against compulsory self-incrimination. *Id.* at 426. The Court held that the California hit-and-run statute did not infringe Byers's Fifth Amendment privilege against self-incrimination.[7] *Id.* at 427.

¶ 20. Four justices of the *Byers* majority concluded that the California hit-and-run statute does not create a substantial risk of self-incrimination. *Id.* The lead opinion began its analysis by noting that many statutory schemes require the filing of information that "could well be 'a link in the chain' of evidence leading to prosecution and conviction"; but, under the Court's prior holdings, "the mere possibility of incrimination is insufficient to defeat the strong policies in favor of a disclosure called for by statutes like the one challenged here." *Id.* at 428. Instead, the key inquiry is whether "the compelled disclosures . . . themselves confront the claimant with 'substantial hazards of self-incrimination.' " *Id.* at 429. The lead opinion reviewed the prior cases in which the Court had held that statutorily required disclosures did violate the Fifth Amendment and observed that those cases involved disclosures that were "extracted from a 'highly selective group inherently suspect of criminal activities' and the privilege was applied . . . in ' . . . area[s] permeated with criminal statutes'—not in ' . . . essentially noncriminal and regulatory area[s] of inquiry.' " *Id.* at 430 (citations omitted).[8]

---

[7] Although *California v. Byers*, 402 U.S. 424, 425 (1971), addressed the California hit-and-run statute, it noted that "[s]imilar 'hit-and-run' or 'stop-and-report' statutes are in effect in all 50 States and the District of Columbia."

[8] The prior cases referred to are: *Albertson v. SACB*, 382 U.S. 70 (1965) (holding the Fifth Amendment precludes government agency orders from requiring individuals to admit of membership in the Communist Party); *Marchetti v. United*

¶ 21. In contrast, the lead opinion viewed the California Vehicle Code as essentially regulatory, not criminal, although it does define some criminal offenses. *Id.* The lead opinion stated that the purpose of hit-and-run statutes is not to "facilitate criminal convictions but to promote the satisfaction of civil liabilities arising from automobile accidents;" and hit-and-run statutes are directed to all persons who drive in the state—essentially to the " 'public at large,' " not to a group that is " 'highly selective' " or " 'inherently suspect of criminal activities.' " *Id.* at 430–31. Driving itself is a lawful activity, the lead opinion observed, and most accidents occur without criminal liability. *Id.* at 431. As a result, the lead opinion concluded, the "disclosures with respect to automobile accidents simply do not entail the kind of substantial risk of self-incrimination" involved in the statutory requirements held to violate the Fifth Amendment in prior cases. *Id.*

¶ 22. The lead opinion also considered it significant that the self-reporting required by hit-and-run statutes is "indispensable to [the] fulfillment" of the statutory purpose, which is non-criminal. *Id.* at 431.

¶ 23. Another component of the lead opinion's analysis is its conclusion that the acts required by the California hit-and-run statute—stopping and giving one's name and address—are not testimonial within the meaning of the Fifth Amendment. *Id.* at 431–32. The Court described the divulgence of the person's name

*States*, 390 U.S. 39 (1968) and *Grosso v. United States*, 390 U.S. 62 (1968) (severally holding the Fifth Amendment privilege precludes criminal prosecution for noncompliance with federal gambling tax and registration laws); and *Haynes v. United States*, 390 U.S. 85 (1968) (holding the Fifth Amendment precludes convictions for possession of and failure to register illegal firearms).

and address as a "neutral act," *id.* at 432; this information "identifies, but does not by itself implicate anyone in criminal conduct." *Id.* at 434. While "compliance with [the reporting requirement] might ultimately lead to prosecution for some contemporaneous criminal violation of motor vehicle code if one occurred . . . such offense could be established by independent evidence."[9] *Id.* at 432.

¶ 24. The fifth justice in the *Byers* majority disagreed with the lead opinion's conclusions that California's hit-and-run statute does not present a substantial danger of self-incrimination and that the required stopping and reporting is not testimonial. *Id.* at 438–39 (Harlan, J., concurring). In Justice Harlan's view, "the public regulation of driving behavior through a pattern of laws which includes compelled self-reporting to ensure financial responsibility for accidents and criminal sanctions to deter dangerous driving entails genuine risks of self-incrimination from the driver's point of view." *Id.* at 448. Nonetheless, "the noncriminal governmental purpose in securing the information, the necessity for self-reporting as a means of securing the information, and the nature of the disclosures involved" led Justice Harlan to agree that the statute does not infringe the Fifth Amendment privilege. *Id.* at 458.

¶ 25. Harmon contends that *Byers* does not resolve his Fifth Amendment challenge because *Byers* does not address disclosure requirements as applied to the class of

---

[9] In a subsequent case, *United States v. Hubbell*, 530 U.S. 27, 35 n.16 (2000), the Court cited *Byers* for this proposition: "the fact that incriminating evidence may be the by product of obedience to a regulatory requirement such as . . . reporting an accident, does not clothe such required conduct with the testimonial privilege."

drivers who deliberately cause injury with their vehicles. We do not agree with this reading of *Byers*.

¶ 26. The lead opinion in *Byers* recognizes that in some situations the underlying conduct causing an accident may be criminal. Its statement that "most accidents occur without creating criminal liability," *id.* at 431, is an implicit acknowledgment that some accidents *are* the result of criminal activity. In spite of that fact, the lead opinion concludes, the statute is " 'directed at the public at large,' " not to a group that is " 'highly selective' " or " 'inherently suspect of criminal activities.' " *Id.* at 430–31. In other words, it is the focus and purpose of the statute that is critical to the lead opinion's analysis, notwithstanding the fact that some members of the public at large who are required to report an accident might also have criminal liability for their conduct. The class of persons subject to Wisconsin's hit-and-run statute is not distinguishable from that of the California statute in *Byers*: both are directed to the public at large. Under the lead opinion's analysis, the fact that some drivers, like Harmon, may have criminal liability for their conduct does not alter the purpose and focus of WIS. STAT. § 346.67(1).

¶ 27. Similarly, the lead opinion's analysis on the non-testimonial nature of the stop-and-report requirements expressly addresses the possibility that there may be "collateral consequences" to identifying oneself and that "compliance . . . might ultimately lead to prosecution for some contemporaneous criminal violation of the motor vehicle code if one occurred." *Id.* at 432.

¶ 28. Justice Harlan's analysis also takes into account the fact that there may be criminal liability for the conduct involved in an accident for which the statute imposes the obligation to stop and identify oneself. *Id.* at 448.

¶ 29. In short, all the analyses leading to the conclusion of the *Byers* majority that the California hit-and-run statute does not infringe the Fifth Amendment privilege against self-incrimination take into account the possibility of criminal liability for conduct involved in some accidents. Nonetheless the majority concluded that the requirement of stopping and giving one's name and address does not infringe on the Fifth Amendment privilege. Harmon has not argued that there is any difference between the purpose and requirements of the California statute and those of Wis. Stat. § 347.67(1) that provides a basis for concluding that *Byers* is not dispositive. Accordingly, we conclude that, under *Byers*, our construction of "accident" in § 347.67(1), which may include intentional conduct, does not infringe Harmon's Fifth Amendment privilege against self-incrimination.[10]

---

[10] We observe that numerous state courts have concluded that under *Byers* the reporting requirements of the state's hit-and-run statute do not infringe a defendant's privilege against self-incrimination. *See, e.g., People v. Goodin,* 668 N.W.2d 392, 394–396 (Mich. Ct. App. 2003); *Commonwealth v. Long,* 831 A.2d 737, 744–50 (Pa. Super. Ct. 2003); *State v. Adams,* 891 P.2d 251, 253–54 (Ariz. Ct. App. 1995); *People v. Jimenez,* 15 Cal. Rptr. 2d 268, 276–77 (Ct. App. 1992); *Creary v. State,* 663 P.2d 226, 229–30 (Alaska Ct. App. 1983); *State v. Melemai,* 643 P.2d 541, 545–46 (Haw. 1982); *State v. Greenberg,* 607 P.2d 530, 533–35 (Kan. Ct. App. 1980); *State v. Smyth,* 397 A.2d 497, 499–500 (R.I. 1979); *Trail v. State,* 552 S.W.2d 757, 758 (Tenn. Ct. App. 1976); *Banks v. Commonwealth,* 230 S.E.2d 256, 258–59 (Va. 1976); *People v. Samuel,* 277 N.E.2d 381, 383–87 (N.Y. 1971); *State v. Engstrom,* 487 P.2d 205, 210 (Wash. 1971); *Lamb v. State,* 488 P.2d 1295, 1297 (Okla. Crim. App. 1971).

## CONCLUSION

¶ 30. We conclude the word "accident" in WIS. STAT. § 346.67(1) means "an unexpected, undesirable event" and may encompass intentional conduct. The circuit court's instruction in answer to the juror's question was consistent with this and was not error. We also conclude that this construction of § 346.67(1) does not infringe Harmon's Fifth Amendment privilege against self-incrimination. Accordingly, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.