STATE of Wisconsin, Plaintiff-Respondent,†

v.

Jonathan J. HUBBARD, Defendant-Appellant.

Court of Appeals

*No. 2006AP2753–CR. Submitted on briefs August 14, 2007.*
*—Decided October 24, 2007*

## 2007 WI App 240

(Also reported in 742 N.W.2d 893.)

† Petition to review granted 1/22/08.

359

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven W. Zaleski* of *The Zaleski Law Firm*, Janesville.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Jonathan J. Hubbard appeals from a judgment of conviction for injury by intoxicated use of a vehicle, contrary to Wis. Stat. § 940.25(1)(a) (2005–06).[1] He also appeals from orders denying his motions for a new trial. Hubbard contends that the circuit court erred when it responded to a jury request for clarification of the term "materially impaired" by telling the jury it should give all words not otherwise defined their ordinary meaning. He emphasizes that the circuit court had a more precise definition of "materially impaired" available to it; specifically, that found in *State v. Waalen*, 130 Wis. 2d 18, 27, 386 N.W.2d 47 (1986). As a result of the court's refusal to further instruct the jury, Hubbard asserts that a new trial is warranted in the interest of justice. We agree and reverse the judgment and orders of the court.

## BACKGROUND

¶ 2. This appeal stems from a two-car accident that occurred in January 2005. Hubbard had rear-

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise stated.

ended another vehicle and pushed it off the road into a tree. The crash resulted in serious injuries to a nine-year-old girl. Officers on the scene described Hubbard as uninjured but "disoriented." Hubbard explained that he had taken prescription medication earlier in the day. Further investigation turned up several types of medication in Hubbard's car.

¶ 3. The State charged Hubbard with injury by intoxicated use of a vehicle. The case went to trial and at the close of arguments, the jury was instructed that in order to convict Hubbard, it must find beyond a reasonable doubt that (1) Hubbard operated a vehicle, (2) his operation of the vehicle caused great bodily harm, and (3) Hubbard was under the influence of a prescription medication at the time. The court explained that "[u]nder the influence" meant Hubbard's "ability to operate a vehicle was materially impaired because of consumption of a prescription medication."

¶ 4. The case went to the jury and, during deliberations, the jury sent a written question to the court: "Could the judge define 'materially impaired'? Does this mean that he was impaired enough to have an effect on outcome? If not, what?" Out of the presence of the jury, the court referred to the *Waalen* language and heard arguments from the attorneys as to what the appropriate response to the question would be. The court ultimately ruled the *Waalen* language should not be submitted to the jury. Instead, the court instructed the jury to give all words not otherwise defined their ordinary meaning. The jury returned a guilty verdict shortly thereafter.

¶ 5. Prior to sentencing, Hubbard moved for a new trial arguing that the circuit court's response to the jury was error. The court imposed its sentence and then denied Hubbard's motion. Hubbard then filed a motion

for postconviction relief, renewing his arguments regarding the jury instruction. The court denied Hubbard's motion and Hubbard appeals.

## DISCUSSION

### *Standards of Review*

¶ 6. Hubbard presents one question on appeal: Did the circuit court err when it responded to a jury request for clarification of the term "materially impaired" by withholding the language in *Waalen* and instead directing the jury to "give all words not otherwise defined . . . their ordinary meaning"? This single question, however, comprises three issues. First, the parties dispute whether the *Waalen* language clarifies the statutory term "materially impaired." We employ a de novo standard of review for jury instruction issues that involve the construction of a statutory term. *See State v. Harmon*, 2006 WI App 214, ¶ 8, 296 Wis. 2d 861, 723 N.W.2d 732, *review denied*, 2007 WI 59, 299 Wis. 2d 326, 731 N.W.2d 637. If we conclude that *Waalen* does clarify "materially impaired," we must determine whether the circuit court erroneously failed to provide that clarification to the jury. As Hubbard correctly points out, a circuit court has broad discretion when instructing the jury and must exercise its discretion to fully and fairly inform the jury of the applicable rules of law. *See State v. Ellington*, 2005 WI App 243, ¶ 7, 288 Wis. 2d 264, 707 N.W.2d 907, *review denied*, 2006 WI 23, 289 Wis. 2d 10, 712 N.W.2d 35. In the alternative, we must decide whether to invoke our discretionary reversal power under WIS. STAT. § 752.35 if we conclude that a new trial is necessary to "accomplish the ends of justice."

362

*Definition of "Materially Impaired"*

¶ 7. The general rule regarding words used in statutes is that "[a]ll words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning." Wis. Stat. § 990.01(1). Hubbard asserts that the term "materially impaired" is a technical term that has a peculiar meaning in the law; specifically, that "materially impaired" means "incapable of driving safely" or "without proper control of all those faculties . . . necessary to avoid danger to others." *See Waalen*, 130 Wis. 2d at 27. The State counters that the *Waalen* court did not define "materially impaired," but rather described circumstances under which such impairment could be found to exist. As the State argued to the circuit court, "The *Waalen* case does not provide language of limitation; rather it [is] language of example."

¶ 8. The meaning of the term "materially impaired" has been a source of some debate over the past two decades and the jury instruction committee provides helpful background. The committee explains that the term "under the influence" has long been defined in the criminal code as "materially impaired." Wis JI— Criminal 2600 at 23. In 1982, the committee decided to adopt a definition of "under the influence" that would apply to all drunk driving offenses and would include the term "materially impaired." In its introductory comment to the Operating While Intoxicated instruction, the committee explained:

> In an attempt to provide some guidance to the jury on the meaning of that phrase, the new instruction included the following:

363

> It is not required that impaired ability to operate be demonstrated by particular acts of unsafe driving. What is required is that the person's ability to safely control the vehicle be materially, that is substantially, impaired. WIS JI—CRIMINAL 2663, c. 1982.

> The 1982 revision was not universally acclaimed. Several judges contacted the Committee to express dissatisfaction with it, but the Committee was not convinced that it should be changed.

WIS JI—CRIMINAL 2600 at 23.

¶ 9. In *Waalen*, decided four years later, a trial court refused to give the 1982 version of the instruction to the jury and the supreme court affirmed, holding that the jury instruction committee had erred in equating "materially" with "substantially." *Waalen*, 130 Wis. 2d at 21–22, 27. The court stated that material impairment "exists when a person is incapable of driving safely, or 'is without proper control of all those faculties . . . necessary to avoid danger to others.' " *Id.* at 27. The *Waalen* court insisted that the term "materially impaired" should be defined in a way that would be consistent with the legislative purpose to "foster highway safety." *Id.* at 27. Thus, the court did not want the standard for impairment to be so high that it thwarted that purpose.

¶ 10. The jury instruction committee responded by revising two standard instructions. It revised the criminal code instruction to delete the reference to "substantially" impaired, and it revised the motor vehicle code instruction to delete the reference to "materially" impaired *See* WIS JI—CRIMINAL 2600 at 24. The committee stated that the use of "materially" in the motor vehicle code "invited definition" but that it could

not be helpfully defined without running afoul of the legislative intent recognized in *Waalen*. WIS JI—CRIMINAL 2600 at 24.

¶ 11. We are convinced that the *Waalen* decision clarifies the meaning of the term "materially impaired," which determines whether a person is "under the influence" for purposes of WIS. STAT. § 940.25(1)(a). Judicial construction of a statutory term becomes part of the statute unless subsequently amended by the legislature. *See Wenke v. Gehl Co.*, 2004 WI 103, ¶ 31 n.17, 274 Wis. 2d 220, 682 N.W.2d 405. Where the task is to determine what a statute means, it is appropriate to resort to common and approved usage of terms, which can be established by case law. *See State v. Dalton*, 98 Wis. 2d 725, 739, 298 N.W.2d 398 (Ct. App. 1980).

¶ 12. Given the attention the term "materially impaired" has attracted from the courts, the legislature, and the jury instruction committee, it is no wonder that a jury would also wrestle with what it actually means. We conclude that while the word "materially" and the word "impaired" might be common and ordinary concepts under some circumstances, they have a peculiar meaning in the context of criminal charges for driving under the influence of an intoxicant. Moreover, the *Waalen* court offered more than a mere example of material impairment; it provided much needed clarification of that term.

*Duty to Further Instruct the Jury*

¶ 13. We turn now to the question of whether the circuit court erred when it refused to provide further clarification of the term "materially impaired" to the

jury. The State emphasizes the broad discretion a circuit court has when instructing the jury. As we have stated, "a court is not obligated to provide a jury with information solely because the jury believes it is important to its decision." *State v. Lombard*, 2004 WI App 52, ¶ 20, 271 Wis. 2d 529, 678 N.W.2d 338. In *Lombard*, the jury asked the judge to explain what would happen if Lombard was "discharged"; specifically, it wanted to know if he would "be free with no supervision." *Id.*, ¶ 6. The court informed the jury that it was "not to be concerned with what will happen based on [its] answer to the verdict question." *Id.*, ¶ 7. On appeal, we affirmed and stated that the circuit court's role is to decide whether it is appropriate for the jury to have the information it seeks. *Id.*, ¶ 20.

¶ 14. However, Hubbard's jury did not seek information about the consequences of its verdict; rather, it sought clarification of a term contained in the standard instruction. Although a circuit court enjoys broad discretion when instructing the jury, "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *See Bollenbach v. U.S.*, 326 U.S. 607, 612–13 (1946). At least one court has characterized this as a "duty to answer the jury's question if clarification is requested." *See People v. Carroll*, 751 N.E.2d 44, 47 (Ill. App. 2001). Of course, "[t]he court must be careful not to invade the jury's province as fact-finder." *U.S. v. Blumberg*, 961 F.2d 787, 790 (8th Cir. 1992). In other words, it is the court that provides the legal yardstick and the jury that measures the evidence. *See Bollenbach*, 326 U.S. at 614. Here, there is no dispute that the jury requested clarification of the law, not an assessment of the evidence.

¶ 15. Recent Wisconsin case law provides some guidance. In *Harmon*, the defendant faced a hit-and-run charge and the jury was to determine whether Harmon knew that the vehicle he was driving was involved in an accident involving a person. *Harmon*, 296 Wis. 2d 861, ¶ 5. During deliberations, the jury sent a note to the judge asking for an explanation or legal definition of the term "accident." *Id.* The court responded that the jury should rely on its common sense and everyday understanding of the word, and also provided a dictionary definition. *Id.* Harmon appealed, arguing that the correct response to the jury would have been to explain that "accident" means "lack of intention." *Id.*, ¶ 7. He relied on *Doyle v. Engelke*, 219 Wis. 2d 277, 580 N.W.2d 245 (1998), a supreme court case in which the court addressed the meaning of the term "accident" in the context of an insurance claim. *See Harmon*, 296 Wis. 2d 861, ¶ 9. The *Harmon* court rejected the analogy, holding that the disputed term must be defined within the context of the case. *See id.*, ¶ 12. It held that the *Doyle* definition of "accident" in the context of an insurance dispute was not useful to a jury considering a hit-and-run charge. *See Harmon*, 296 Wis. 2d 861, ¶¶ 12–13.

¶ 16. Implicit in the *Harmon* decision is the principle that when a jury demonstrates confusion about the law, and where relevant help is available, the circuit court should provide clarification. Discharge of the jury's responsibility for drawing appropriate conclusions from the evidence depends on discharge of the judge's responsibility to give the jury the required guidance about the law. *See Bollenbach*, 326 U.S. at 612.

¶ 17. The key factor here is that the request for further instruction came from the jury itself. Interest-

ingly, in some cases where the jury has requested clarification and the circuit court chose simply to re-read instructions, there was an indication from the jury that it found that solution satisfactory. *See, e.g., Olson v. Siordia*, 25 Wis. 2d 274, 279, 130 N.W.2d 827 (1964) ("The jury foreman stated that he believed the questions were answered."); *Hareng v. Blanke*, 90 Wis. 2d 158, 166–67, 279 N.W.2d 437 (1979) ("A juror acknowledged that the re-reading was helpful."). Here the court received the jury's question, heard arguments from the parties regarding the appropriate response, reviewed and rejected the *Waalen* definition of "materially impaired," and held that the jury instruction using the term "materially impaired" needed no further clarification. This decision, we conclude, was erroneous.

*Discretionary Reversal in the Interests of Justice*

¶ 18. Because the trial court erroneously exercised its discretion when it declined to further instruct the jury on the definition of "materially impaired," we must decide the appropriate remedy. Generally, where the circuit court errs in instructing the jury, we must then determine whether that error affected the substantial rights of a party such that there was a reasonable possibility that the error contributed to the outcome. *See Nommensen v. American Cont'l Ins. Co.*, 2001 WI 112, ¶ 52, 246 Wis. 2d 132, 629 N.W.2d 301. However, we also have discretionary authority under Wis. Stat. § 752.35 to order a new trial "to accomplish the ends of justice." This is appropriate when we conclude that the real controversy has not been fully tried or that it is probable that justice has miscarried. *Id.* When we invoke our discretionary reversal power on grounds that the real controversy has not been tried, we need

not determine whether the outcome of the trial would have been different on retrial. *See Vollmer v. Luety*, 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990).

¶ 19. Discretionary reversal may be exercised where an erroneous or deficient jury instruction results in a controversy not being fully tried. *See, e.g., id.* at 19; *Air Wisconsin, Inc. v. North Cent. Airlines, Inc.*, 98 Wis. 2d 301, 318, 296 N.W.2d 749 (1980); *State v. Perkins*, 2001 WI 46, ¶ 49, 243 Wis. 2d 141, 626 N.W.2d 762. Jury instructions must have two key characteristics in order to protect the integrity of our jury system: (1) legal accuracy, and (2) comprehensibility. When juror comprehension is compromised, factors that are irrelevant or inappropriate to the controversy at hand may infect the deliberations. As one commentator states:

> Although it is presumed that jurors understand and follow jury instructions, which is a "crucial assumption underlying the system of trial by jury," "[o]nce it is established that jurors do not fully understand instructions, the related assumption that jurors faithfully follow them also becomes subject to grave doubt. Even with the best of intentions, people cannot follow instructions that they do not comprehend."

Charles M. Cork, III, *A Better Orientation for Jury Instructions*, 54 MERCER L. REV. 1, 6 (2002–03) (footnotes omitted). Unclear instructions "lead to uncertainty about how to apply the law to the facts, which may invite the jury to decide the case without regard to the facts or the law." *Id.* Therein lies our concern about this case. Although the standard instructions given here were arguably legally sufficient, the jury admitted that it did not fully comprehend the term "materially impaired." The circuit court had the opportunity to

address the jury's confusion, but chose not to offer the jury the case law definition of the troublesome term. We are convinced that the real controversy here has not been fully tried because the jury did not understand a key legal concept of the charge before it. Accordingly, a new trial in the interest of justice is warranted.

## CONCLUSION

¶ 20. We conclude that the supreme court has defined the term "materially impaired" as used in the criminal code jury instruction by stating that material impairment "exists when a person is incapable of driving safely, or 'is without proper control of all those faculties . . . necessary to avoid danger to others.' " *See Waalen*, 130 Wis. 2d at 27. We further conclude that under the facts of this case, specifically in light of the jury's request for clarification of the term "materially impaired," the circuit court erred when it failed to give the jury the guidance it needed to perform its task. Where a jury does not comprehend the law it is asked to apply, the controversy is not fully tried and a new trial is required in the interest of justice. We therefore reverse the judgment and orders of the circuit court and remand for a new trial in accordance with this decision.

*By the Court.*—Judgment and orders reversed and remanded with directions.