STATE of Wisconsin,
Plaintiff-Respondent,

v.

Ernesto E. LAZO VILLAMIL,
Defendant-Appellant.†

Court of Appeals

*No. 2015AP791–CR. Submitted on briefs April 21, 2016.
—Decided July 20, 2016.*

2016 WI App 61

† Petition for Review Filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michelle L. Velasquez*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas J. Balistreri*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J. Ernesto Lazo Villamil appeals (1) his judgment of conviction for felony causing

a death while knowingly operating a motor vehicle after his driver's license was revoked (OAR) and (2) the denial of his motion for postconviction relief.[1] He argues that the statutory provisions underlying his conviction and sentence, Wis. Stat. § 343.44(1)(b) (2009–10)[2] and Wis. Stat. § 343.44(2)(ar)4. (eff. Mar. 1, 2012), are ambiguous as to whether he should be convicted of and sentenced for a misdemeanor or a felony, and therefore, under the rule of lenity, he should be convicted of and sentenced on a misdemeanor, rather than the felony under which he is now convicted and sentenced. Relatedly, he further contends the statutory scheme is unconstitutional on due process and equal protection grounds because it does not provide fair notice of the conduct that is prohibited or adequate standards for when a defendant should be prosecuted and adjudicated for a misdemeanor or a felony. Lastly, he asserts he is entitled to resentencing because the court failed to consider specific factors enumerated in § 343.44(2)(b) when it sentenced him.

¶ 2. We conclude the rule of lenity is not applicable here and the statutory scheme under which Lazo Villamil was convicted and sentenced is constitutional. We do, however, return this matter to the circuit court for resentencing of Lazo Villamil because the record indicates the court failed to consider factors required by Wis. Stat. § 343.44(2)(b). Thus, we affirm in part, reverse in part, and remand for further proceedings.

---

[1] The Honorable Donald J. Hassin, Jr. presided over Lazo Villamil's plea and sentencing and entered the judgment of conviction. The Honorable Michael J. Aprahamian entered the order denying Lazo Villamil's postconviction motion.

[2] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

*Background*

¶ 3. On October 30, 2012, Lazo Villamil drove into the rear end of another vehicle, killing the operator of that vehicle. Lazo Villamil's driver's license was revoked at the time, and he was charged with, and pled to, one count of violating Wis. Stat. § 343.44(1)(b) (2009–10) and Wis. Stat. § 343.44(2)(ar)4. (eff. Mar. 1, 2012) for causing the death of another person while OAR, a felony. In the course of his plea, he admitted that at the time he operated the vehicle, he knew his license was revoked. The circuit court sentenced him to the maximum penalty of three years of initial confinement followed by three years of extended supervision. Lazo Villamil filed a postconviction motion, which the court denied following a hearing. He appeals. Additional facts are included below.

*Discussion*

*Misdemeanor or Felony Offense*

¶ 4. Prior to 2012, Wis. Stat. § 343.44 (2009–10) provided that a person could be convicted of a Class A misdemeanor if he/she caused great bodily harm to or the death of another while *knowingly* operating a motor vehicle with a suspended or revoked driver's license, *see* § 343.44(1)(am) & (b), (2)(g) & (h), but did not provide for a criminal offense of causing great bodily harm to or the death of another while *unknowingly* operating a motor vehicle with a suspended or revoked driver's license, *see generally* § 343.44. With 2011 Assembly Bill 80, ultimately enacted into law as 2011 Wis. Act 113 (Act 113), the legislature revised § 343.44.

¶ 5. WISCONSIN STAT. § 343.44(1)(b) (2009–10) was unchanged by Act 113. In relevant part, it provides, as it did before:

> *Operating while revoked.* No person whose operating privilege has been duly revoked under the laws of this state may *knowingly* operate a motor vehicle upon any highway in this state during the period of revocation . . . .

Sec. 343.44(1)(b) (second emphasis added). WISCONSIN STAT. § 343.44(2)(ar)4. (eff. Mar. 1, 2012), the "penalties" section of § 343.44, was changed however, so that it reads in relevant part:

> Any person who violates sub. (1)(b) and, in the course of the violation, causes the death of another person[3] shall be fined not less than $7,500 nor more than $10,000 or imprisoned for not more than one year in the county jail or both, *except that, if* the person *knows* at the time of the violation that his or her operating privilege has been revoked, the person is guilty of a Class H felony.

Sec. 343.44(2)(ar)4. (emphasis added).

¶ 6. Lazo Villamil's challenge in this case arises because WIS. STAT. § 343.44(2)(ar)4. (eff. Mar. 1, 2012) appears to establish as a misdemeanor ("imprison-[ment] for not more than one year in the county jail," *see* WIS. STAT. § 939.60), the offense of causing the death of another while violating § 343.44(1)(b), but then establishes that the same offense is a felony "if" the violator "knows" at the time of the violation "that his or her operating privilege has been revoked." The problem is that this "knowledge" distinction is ulti-

---

[3] 2011 Wis. Act 113 also modified penalties with regard to causing great bodily harm to a person. *See* WIS. STAT. § 343.44(2)(ar)3. (eff. Mar. 1, 2012); 2011 Wis. Act 113, § 17.

mately illusory because a person cannot violate the misdemeanor provision unless he or she "knows" his/her license has been revoked because the underlying OAR offense—"sub. (1)(b)"—requires such knowledge. *See* § 343.44(1)(b); *see also* WIS JI—CRIMINAL 2621. Thus, both the misdemeanor and felony offenses require knowledge by the offender that his/her license has been revoked and essentially have the same elements.

*The Rule of Lenity*

¶ 7. Lazo Villamil argues that because WIS. STAT. § 343.44(1)(b) (2009–10) and WIS. STAT. § 343.44(2)(ar)4. (eff. Mar. 1, 2012) provide that either the misdemeanor or the felony provision could apply to his offense, ambiguity exists as to which provision should apply and thus, based upon the rule of lenity, the misdemeanor should apply. We conclude the rule of lenity is not applicable here.

¶ 8. The rule of lenity "provides generally that ambiguous penal statutes should be interpreted in favor of the defendant." *State v. Cole*, 2003 WI 59, ¶ 67, 262 Wis. 2d 167, 663 N.W.2d 700. The rule, however, only "comes into play" if "the penal statute is ambiguous" *and* "we are unable to clarify the intent of the legislature by resort to legislative history." *Id.* Here, any ambiguity resulting from the fact either the misdemeanor or felony provision could apply is resolved by legislative history.

¶ 9. Lazo Villamil acknowledges in his brief-in-chief on appeal: "The legislature purported to draw a classification between those who committed the of-

fense knowing that their operating privileges were revoked and those who did not"; "it seems that the intention was to create an additional element that distinguished the underlying offense, a misdemeanor, from the enhanced felony"; and "it is evident that the legislature intended to draw some distinction and to provide a specific circumstance under which a prosecutor could charge a felony OAR causing death." We agree.

■

¶ 10. Determining the intent of the legislature is a matter of law we review de novo. *State v. Polashek,* 2001 WI App 130, ¶ 31, 246 Wis. 2d 627, 630 N.W.2d 545, *aff'd in part, rev'd in part,* 2002 WI 74, 253 Wis. 2d 527, 646 N.W.2d 330.

¶ 11. The Legislative Reference Bureau (LRB) analysis for A.B. 80 recognized that under the law as it existed prior to enactment of Act 113, "a person who, in the course of a 'knowing' OWS [operating while suspended] violation or OAR violation, cause[d]: ... death to another person" was guilty of "a Class A misdemeanor, punishable by a maximum fine of $10,000 or a maximum term of imprisonment of nine months or both." *See* LRB Analysis of A.B. 80, p. 2; *see also* WIS. STAT. § 343.44(2)(b) (2009–10). The analysis added that A.B. 80 "creates *new penalties* for OWS, OAR, and OWL[4] violations in which the person, in the course of the violation, causes . . . death to another person." LRB Analysis of A.B. 80, p. 2 (emphasis added). The analysis then explains that under A.B. 80:

---

[4] OWL stands for "operating without a license" and is defined and addressed in WIS. STAT. § 343.05(3)-(5). *See also* A.B. 80; LRB Analysis of A.B. 80, p. 1.

If the person causes the death of another in the course of the *OWL* or *OWS* violation, the person: 1) must forfeit not less than $7,500 nor more than $10,000 if the person *did not know,* respectively, that he or she did not possess a valid operator's license or that his or her operating privilege was suspended; or 2) is guilty of a *Class H felony* if the person *knew.* A Class H felony is punishable by a maximum fine of $10,000 or a maximum term of imprisonment of six years or both . . . . If the person causes the death of another in the course of the *OAR* violation, the person: 1) must be fined not less than $7,500 nor more than $10,000 or *imprisoned for not more than one year* or both if the person *did not know* that his or her operating privilege was revoked; or 2) is guilty of *a Class H felony* if the person *knew.*

LRB Analysis of A.B. 80, pp. 2–3 (emphasis added).

¶ 12. Thus, the legislative history clarifies that the legislature intended to write these provisions so that in a situation where a person causes the death of another while OWL, OWS, or OAR, the penalty would be less severe if the operator did not know he/she did not possess a valid license or his/her license was suspended or revoked, and would be more severe if he/she knew. *See* Wis. Stat. §§ 343.05(5)(b)5., 343.44(2)(ag)3., (ar)4. Specifically relevant to this case, the history shows the legislature's intent to treat an OAR causing death offense as a misdemeanor if the operator did not know his/her license had been revoked and as a Class H felony if the operator knew. The legislature, however, failed to remove the "knowledge" element from the misdemeanor language of §§ 343.44(1)(b)/343.44(2)(ar)4., and thus failed to accomplish the first part of this intent. Nonetheless, in a situation like that now before us, where Lazo Villamil caused the death of another and knew his license had

been revoked, the legislative history shows, and Lazo Villamil acknowledges, the legislature intended to treat such an offense as a Class H felony.

¶ 13. In light of this clarification, the rule of lenity should not be utilized to penalize Lazo Villamil only with a misdemeanor. While we ultimately hold application of WIS. STAT. §§ 343.44(1)(b)/343.44(2)(ar)4. to the language the legislature actually wrote—that "knowledge" by the operator of his/her revocation status is an element of the misdemeanor provision as well as the felony provision—for purposes of rule of lenity consideration, the legislature's intent to apply the more severe penalty to offenses such as Lazo Villamil's informs us that Lazo Villamil was appropriately convicted of and sentenced for a Class H felony.

*Constitutionality*

■

¶ 14. Lazo Villamil next argues that the statutory scheme of WIS. STAT. § 343.44(1)(b) (2009–10) and WIS. STAT. § 343.44(2)(ar)4. (eff. Mar. 1, 2012) violates the Due Process and Equal Protection Clauses of the United States and Wisconsin Constitutions. He contends this is so because these statutory provisions do not provide fair notice of the conduct that is prohibited or adequate standards for when a defendant should be prosecuted and adjudicated for a misdemeanor or a felony. Whether constitutional provisions are violated is a question of law we review de novo. *State v. Harmon*, 2006 WI App 214, ¶ 18, 296 Wis. 2d 861, 723 N.W.2d 732 (citing *State v. Hall*, 207 Wis. 2d 54, 67–68, 557 N.W.2d 778 (1997)).

¶ 15. Lazo Villamil claims "[t]he statute is vague and does not provide definite notice to defendants, or to those enforcing the law as to how, or under what circumstance, one may be liable for a felony or misde-

meanor." He also argues there is no "legitimate and rational distinction" between the misdemeanor and felony penalties here and thus "applying misdemeanor or felony penalties would be arbitrary and serve no rational purpose." Our supreme court's decision in *State v. Cissell*, 127 Wis. 2d 205, 378 N.W.2d 691 (1985), drives our rejection of Lazo Villamil's constitutional challenges.

¶ 16. Cissell asserted, and our supreme court agreed, that the elements of felony abandonment (the statutory violation with which he was charged) were substantially identical to the elements of misdemeanor failure to support. *Id.* at 214. As the court phrased it, Cissel argued "that statutes with identical substantive elements but different penalty schemes violate due process and equal protection." *Id.* Similar to Lazo Villamil here, Cissell argued the State violated his equal protection and due process rights by charging him with the felony rather than the misdemeanor provision, and relatedly argued that the felony abandonment statute violated due process because it was vague. *Id.* at 208–09, 214, 224. Also similar to Lazo Villamil, Cissell claimed, as phrased by the *Cissell* court, that "disparate sentencing exposures for crimes with identical elements are irrational and arbitrary." *Id.* at 214.

¶ 17. In addressing Cissell's arguments, the *Cissell* court first noted "there is a strong presumption favoring the constitutionality of a legislative enactment," adding that the court "will construe the statute to preserve it if it is at all possible to do so." *Id.* at 214–15. The court then applied the United States Supreme Court's holding in *United States v. Batchelder*, 442 U.S. 114 (1979), that "overlapping criminal statutes with different penalty schemes do

not violate constitutional principles unless the prosecutor selectively bases the charging decision upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Cissell*, 127 Wis. 2d at 215. The *Cissell* court stated, "[T]he fact that the defendant's conduct may be chargeable under either of two statutes does not make prosecution under one or the other statute improper *per se;* the focus instead is on whether the prosecutor unjustifiably discriminated against any class of defendants." *Id.* at 216. "Differences in treatment between individuals . . . are determined as a matter of prosecutorial discretion . . . . [S]uch discretion is not unconstitutional unless the prosecutor discriminates on the basis of unjustifiable criteria." *Id.* at 222. The *Cissell* court concluded, "Although [Wis. Stat. §§] 52.05 and 52.055 . . . are identical element crimes with different penalties, the state does not deny equal protection or due process by charging defendants with the more serious crime." *Cissell*, 127 Wis. 2d at 224.

¶ 18. Lazo Villamil makes no suggestion the prosecutor in this case chose to charge him with a felony violation instead of a misdemeanor based upon Lazo Villamil's "race, religion or other arbitrary classification." Under *Cissell*, neither the existence of different penalties for violations of the same elements nor the prosecutor's decision to charge the felony penalty here violates due process or equal protection principles.

■

¶ 19. Lazo Villamil also claims Wis. Stat. § 343.44(1)(b) (2009–10) and Wis. Stat. § 343.44(2)(ar)4. (eff. Mar. 1, 2012) should be declared void due to vagueness. As mentioned, Cissell made a similar contention. The *Cissell* court noted that courts must

consider two factors when determining whether a statute is void for vagueness: "First, '[a] criminal statute must be sufficiently definite to give a person of ordinary intelligence who seeks to avoid its penalties fair notice of conduct required or prohibited.' Second, the 'statute must also provide standards for those who enforce the laws and those who adjudicate guilt.' " *Cissell*, 127 Wis. 2d at 224–25 (alternation in original; citations omitted). The *Cissell* court concluded the felony abandonment statute in that case was not void due to vagueness. *Id.* at 225.

¶ 20. Again considering *Cissell*, we conclude the provisions at issue here are not unconstitutionally vague. There is no question what conduct is prohibited or what standard must be applied by prosecutors and courts. As the circuit court stated in its written decision denying Lazo Villamil's postconviction motion, Wis. Stat. § 343.44(2)(ar)4. (eff. Mar. 1, 2012) "makes clear that a person knowingly operating a vehicle while revoked faces the penalties applicable for a Class H felony if, in the course of the violation, he or she causes the death of another." That a prosecutor could charge a person with a misdemeanor instead of a felony for the same offense does not mean the prohibited conduct is unclear or that the public is not on notice that such an offense may well result in a felony conviction.[5] The legislature may have erred in the language it actually adopted by failing to remove the "knowledge" element for a misdemeanor offense of causing a death while OAR; however, that just means an individual cannot be convicted of unknowing OAR

_____

[5] Furthermore, as previously discussed, the legislative history clarifies that the legislature intended to make such a knowing offense a felony, providing guidance for prosecutors and courts.

causing death,[6] it does not invalidate a felony knowing OAR causing death conviction and sentence.

¶ 21. Lazo Villamil attempts to distinguish *Cissell* from this case by noting that in *Cissell* there were "two different offenses that courts interpreted as having substantively identical elements," whereas "here, there is one offense with two very distinct punishments, both contained within the same statutory provision." He made the same type of argument in his postconviction motion before the circuit court, and the court asked Lazo Villamil's counsel for additional briefing identifying legal authority supporting any import of this two-offenses-versus-one distinction. In its written decision, the court noted counsel "was unable to provide any authority for that distinction." Lazo Villamil also cites no authority on appeal for why this distinction makes a difference, and simply argues that the relevant statute here gives too much discretion to prosecutors. We are not convinced that a meaningful distinction exists between the circumstances here and those in *Cissell*. Whether one criminal statute or two, criminal provisions with "identical substantive elements" are involved and prosecutors have discretion to decide whether they will charge a defendant with a misdemeanor or a felony.

¶ 22. The statutory provisions at issue and the prosecutor's decision to charge Lazo Villamil with the Class H felony rather than a misdemeanor are constitutionally sound, and thus we affirm Lazo Villamil's conviction.

---

[6] As stated, the legislative history clarifies that the legislature intended to remove the "knowledge" requirement for a misdemeanor offense of OAR causing death, however, it failed to do so with the legislation enacted. This would be an easy fix, if the legislative will to enact such a change remains.

¶ 23. Despite the foregoing, we reverse and remand for resentencing because, as Lazo Villamil argues, the record fails to show that the circuit court considered sentencing factors required by WIS. STAT. § 343.44(2)(b). That section provides:

In imposing a sentence under [WIS. STAT. § 343.44(2)(ar) or (br)], the court *shall* review the record and *consider* the following:

1. The aggravating and mitigating circumstances in the matter, using the guidelines described in par. (d).

2. The class of vehicle operated by the person.

3. The number of prior convictions of the person for violations of this section within the 5 years preceding the person's arrest.

4. The reason that the person's operating privilege was revoked, or the person was disqualified or ordered out of service, including whether the person's operating privilege was revoked for an offense that may be counted under [WIS. STAT. §] 343.307(2).

5. Any convictions for moving violations arising out of the incident or occurrence giving rise to sentencing under this section.

Sec. 343.44(2)(b) (emphasis added).

¶ 24. "To determine how a sentencing court satisfies its obligation to *consider* any applicable sentencing guideline," we must interpret the relevant statutory provision. *State v. Grady*, 2007 WI 81, ¶ 14, 302 Wis. 2d 80, 734 N.W.2d 364 (emphasis added). Statutory interpretation is a matter of law we review de

534

novo. *Id.* "Our goal in interpreting statutory provisions is to give effect to the intent of the legislature, which we assume is expressed in the text of the statute." *Id.*, ¶ 15.

¶ 25. In *Grady*, our supreme court held that when a statute requires a circuit court to "consider" certain sentencing factors and guidelines, that "obligation" is satisfied "when the record of the sentencing hearing demonstrates that the court actually considered the sentencing guidelines *and so stated on the record.*" *Id.*, ¶ 44 (emphasis added). Lazo Villamil points out several of the required sentencing factors that the circuit court failed to address at sentencing, particularly emphasizing that the court "skipped the mitigating circumstances that it was required to consider per Wis. Stat. § 343.44(2)(b)." The State does not dispute that the circuit court failed to state on the record its consideration of § 343.44(2)(b) factors. Nor does the State contend the circuit court in fact did consider all those factors but simply failed to refer to them as the § 343.44(2)(b) factors, or that the court considered the factors relevant to this case but simply failed to reference irrelevant factors.

¶ 26. Instead, the State argues that the requirement in Wis. Stat. § 343.44(2)(b) that the sentencing court "shall . . . consider" the identified factors is not really a requirement, but just a suggestion.[7] It essentially asserts that "shall . . . consider" means

---

[7] The State also argues Lazo Villamil forfeited his right to appeal the circuit court's failure to consider sentencing factors because he did not raise this matter during the sentencing. We disagree. Because Lazo Villamil raised it in his postconviction motion, he did not forfeit this issue. *See State v. Grady*, 2007 WI 81, ¶ 14 n.4, 302 Wis. 2d 80, 734 N.W.2d 364 (holding in a

"should . . . consider"—that "shall" is "directory" not "mandatory." The State insists it "makes no sense" to interpret "shall" as being mandatory because the factors of § 343.44(2)(b) "do not apply at all to any other crimes," even more serious crimes. We, however, see the State's point as actually highlighting the intentionality with which the legislature has treated the OAR offenses covered by this provision. We do not assume the legislature chose the word "shall" lightly, but instead assume it intentionally chose to require courts to consider the factors under § 343.44(2)(b) in knowing OAR causing death offenses but not "other crimes." This was the legislature's choice to make. We cannot conclude, as the State would like, that the legislature did not mean what it wrote. We will not presume that despite using the word "shall," the legislature was secretly hoping courts would interpret this word as "should."

¶ 27. "The general rule in interpreting statutory language is that the word 'shall' is presumed mandatory." *State ex rel. Marberry v. Macht*, 2003 WI 79, ¶ 16, 262 Wis. 2d 720, 665 N.W.2d 155 (citation omitted). The *Grady* court followed this general rule, providing additional guidance for us to do the same. *See Grady*, 302 Wis. 2d 80, ¶¶ 30, 44. Considering sentencing guidelines enacted by the legislature, the *Grady* court wrote that "WISCONSIN STAT. § 973.017(2)(a) provides that 'the court shall consider . . . [i]f the offense is a felony, the sentencing guideline.' " *Grady*, 302 Wis. 2d 80, ¶ 30. Although the question before the court in *Grady* did not focus on whether "shall" meant

---

similar context that "filing a postconviction motion is a timely means of raising an alleged error by the circuit court during sentencing").

the guidelines at issue *must* be considered (mandatory) or merely *should* be considered (directory), through its holding, the court clearly interpreted "shall" as mandatory, concluding that § 973.017(2)(a) created an "obligation" that would be "satisfie[d] . . . when the record of the sentencing hearing demonstrates that the court actually considered the sentencing guidelines and so stated on the record." *Grady*, 302 Wis. 2d 80, ¶ 44.[8]

¶ 28. Similar to the version of WIS. STAT. § 973.017(2)(a) addressed in *Grady*, WIS. STAT. § 343.44(2)(b) states, "In imposing sentence under par. (ar) or (br), the court *shall . . . consider* the following," and then lists the specifically identified factors to be considered. Like our supreme court in *Grady*, we conclude that "the record of the sentencing hearing" must "demonstrate[] that the court actually considered" the factors specifically enumerated in § 343.44(2)(b). *See Grady*, 302 Wis. 2d 80, ¶ 44; *see also* § 343.44(2)(b).

¶ 29. An appellate court will remand for new sentencing only if it is clear the circuit court erroneously exercised its discretion in sentencing the defendant. *See McCleary v. State*, 49 Wis. 2d 263, 278, 182 N.W.2d 512 (1971). A court erroneously exercises its sentencing discretion when it fails to consider factors it

---

[8] In *State v. Moline*, 170 Wis. 2d 531, 489 N.W.2d 667 (Ct. App. 1992), we acknowledged "that when the word 'shall' is in a statute, it usually is considered to be mandatory," but added, "[h]owever, the word 'shall' can be interpreted as merely directory if it is necessary to carry out the clear intent of the legislature." *Id.* at 541–42. Here, the State has failed to convince us there is a "clear intent of the legislature" which will not be carried out if "shall" is interpreted in accordance with the general rule that it is presumed mandatory.

is required by statute to consider. *See LaRocque v. LaRocque*, 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987) (holding the circuit court erroneously exercises its discretion if it fails to apply or misapplies statutory factors); *see also State v. Bizzle*, 222 Wis. 2d 100, 105, 585 N.W.2d 899 (Ct. App. 1998) (citing *Ocanas v. State*, 70 Wis. 2d 179, 187, 233 N.W.2d 457 (1975)) (discussing requirements placed on circuit courts in sentencing). We remand for new sentencing because in this case the record fails to demonstrate the court considered factors required under WIS. STAT. § 343.44(2)(b).

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.