In the Matter of the GUARDIANSHIP AND CONSERVATORSHIP OF Stephen A. PRICE, Sr.

LeRoy PRICE, as Co–Conservator of Stephen Price, Sr., Appellant,

Henry Price, as Co–Conservator of Stephen Price, Sr.,

v.

Stephen A. PRICE, Jr., Appellee.

No. 96–1216.

Court of Appeals of Iowa.

Sept. 24, 1997.

April 16, 1979, Seager remained imprisoned for    the Wheelock murder.

 

Kevin R. Hitchins of Grimes, Buck, Schoell & Beach, Marshalltown, for appellant.

Judith R. Benson of Correll & Sheerer, Cedar Falls, for appellee.

Heard by CADY, P.J., and HUITINK and VOGEL, JJ.

VOGEL, Judge.

LeRoy Price, as co-conservator of Stephen Price, Sr., appeals a district court ruling that Stephen Price, Jr. (Steve) and Donna Price were entitled to compensation for the reasonable value of their services in caring for Stephen, Sr. and his wife, Eva. LeRoy argues the district court erred in: (1) finding no contract existed between the estate, Steve, and Donna; (2) awarding Steve and Donna compensation of $4000 per month commencing November 1993 for twenty-five months of employment; and (3) exceeding its authority by ordering the conservators to hire Steve and Donna at a set rate.

***Background facts.*** In September 1993, Colleen Eflin, a daughter of Stephen, Sr. and Eva, wrote to Steve and asked if he and his wife, Donna, would consider retiring and returning to Iowa to care for Stephen, Sr. and Eva for $840 per week. Steve and Donna moved to Iowa in November 1993, concluding that $840 per week would be sufficient to cover their living expenses, although Steve intended to supplement that income with a part-time job. Once they arrived in Iowa, however, Clarence, attorney-in-fact for Stephen, Sr. and Eva, proposed paying them only $1250 per month. Following negotiations, Steve agreed to work for $400 per week. Clarence initially paid Steve $1600 per month, rather than $400 per week. In February 1994, Clarence began paying Steve $1800 per month. By the summer of 1994, Steve was paid $2000 per month. Following a family meeting in February 1995, LeRoy Price prepared a written agreement providing for Steve and Donna to care for their parents for $3250 per month. LeRoy, Clarence, and Steve all signed this document.

By letter dated April 7, 1995, attorney Kirby Schmidt wrote to Clarence and Steve stating they should all meet to openly discuss the compensation issue. On April 20, 1995,

Schmidt, Clarence, Steve, and attorney John Livingston met to discuss Steve's salary. Steve demanded $2000 in back pay at that time and also gave notice he would no longer care for the wards effective June 1, 1995. On May 15, 1995, Schmidt wrote Steve and Donna stating their services would be terminated on June 1, 1995, and Steve should vacate the premises on that date. During the spring of 1995, however, Eva suffered a stroke, and Clarence decided to pay Steve $3450 per month for their parents' care.

In July 1995, LeRoy and Henry Price were appointed co-conservators for the estate. Steve subsequently filed a claim for past compensation, and a hearing was held in February 1996. In March 1996, the district court entered an order finding that, except for the time period of January 1995 through April 1995, no contract for services ever existed between Steve, Donna, and the conservator. The court concluded the family meeting in February 1995 resulted in an obligation on behalf of the estate to pay Steve and Donna $3250 per month. The court opined that the reasonable compensation for the other months not covered by the agreement was $4000 per month retroactive pay minus the compensation they had already received. The court further ruled they were entitled to $4000 per month for future services. LeRoy Price, as co-conservator has appealed.

*I. Contract.* These proceedings were tried to the court as a matter of law (Iowa Code § 633.33) and our review is accordingly for errors at law. *Patterson v. Patterson,* 189 N.W.2d 601, 602–03 (Iowa 1971).

■ The district court determined as a matter of law a contract did not exist between the estate and Steve and Donna[1] from November 1993 to January 1995. We disagree. We find there was an agreement between Clarence as attorney-in-fact for Stephen, Sr. and Eva and Steve from November 1993 until the agreement signed in February 1995. The only required elements of a binding contract are mutual assent to the contractual terms manifested by an offer and acceptance. *Kristerin Dev. Co. v. Granson Inv.,* 394 N.W.2d 325, 331 (Iowa 1986). In order to find the existence of an express oral contract, there must be "sufficient evidence of its terms to ascertain the duties and conditions established." *Audus v. Sabre Communications Corp.,* 554 N.W.2d 868, 871 (Iowa 1996); *accord Bowser v. PMX Indus., Inc.,* 545 N.W.2d 898, 899 (Iowa App.1996). Moreover, for an oral contract to be found and enforceable, the terms must be so definitely fixed so that nothing remained except to reduce the terms to writing. *Daughton v. Parson,* 423 N.W.2d 894, 898 (Iowa App. 1988) (citing *Marti v. Ludeking,* 193 Iowa 500, 503–04, 185 N.W. 476, 477–78 (1921)).

Steve admits he offered to care for the wards in their home and he and Clarence agreed on $400 per week. Both parties knew of the essential terms of the agreement and accordingly performed their respective duties. Steve's testimony evidenced the existence of the agreement:

Q: When you did start [providing services for your parents] you agreed with Clarence Price that you would receive $400 a week, didn't you?

A: *That's what we agreed on, yes.*

Clarence, when asked during his testimony whether $400 per week was acceptable to him, replied, "Yes, it was." This testimony established the uncontroverted terms for payment. The other essential term was Steve's agreeing to provide care services for his parents as evidenced by his moving into his parent's home in Iowa and undertaking their care.

■ While Steve argues many terms of the caretaking arrangement were left undecided, such as whether he would work as an independent contractor, the level of care needed, whether there would an be offset for rent, compensation for maintenance work, or determination of vacation time, "[a]n agreement need not contain definitely and specifically every fact in detail to which the parties may be agreeing." 17A Am.Jur.2d *Contracts* § 197 (1991). The agreement need only be

---

1. While it is undisputed Donna provided services for Stephen, Sr. and Eva, Donna was not a party to the claim for compensation for services. We thus determine that the court erred in including Donna in the judgment.

"certain and unequivocal in its *essential terms*" and "absolute certainty is not required; only reasonable certainty is necessary." *Id.* § 196 (emphasis added). The essential terms of $400 per week, in exchange for caretaking services, comprised the definite and essential terms of the agreement. Steve cannot argue the level of care warranted by his parents was a term so vague that it could defeat the contract. From the onset, as evidenced by Colleen Eflin's September 1993 letter, the health care needs of the parents should have been apparent. Steve could have refused to begin or could have at any time discontinued the care by terminating the agreement. The parties' respective duties could be determined by a court with reasonable certainty. *See id.* § 196 ("[T]he subject matter of the agreement must be expressed in such terms that it can be ascertained with reasonable certainty ... an agreement to be binding must be sufficiently definite to enable the court to determine its exact meaning and fix definitely the legal liability of the parties.").

The district court awarded Steve retroactive payments for twenty-five (25) months, for which he claimed to have been inadequately compensated. The district court may not strike a more favorable agreement than Steve was able to procure for himself at the time the bargain was formed. Our supreme court has articulated it will not "so grossly interfere with the parties' freedom to contract" and declare invalid any agreement constituting a "bad fiscal bargain for one party." *See In re Marriage of Spiegel*, 553 N.W.2d 309, 316 (Iowa 1996).

We therefore find the district court erred in its determination no agreement existed until the February 1995 agreement and also erred in awarding back pay for services rendered. We accordingly reverse the district court on this issue.

**II. District court authority.** The district court sitting in probate has the authority to set compensation upon application of a party. *See* Iowa Code §§ 633.647(3)(a)-(d), (5) (1995). We find the trial court did not exceed its authority by ordering the conservators to hire Steve at a set rate for future services.

**III. Compensation.** When reviewing the adequacy of compensation, we review de novo. Iowa Code § 633.33 (1995). The district court determined $4000 per month was an appropriate amount for past and future services. Steve asked for $7.00 to $7.25 per hour prospective and retrospective "commercial market rate" compensation in his petition. However, when he moved back to Iowa, following Colleen's letter which was essentially an offer of $5.00 per hour, Steve eventually took *less* than that. It therefore appears his attempt to receive retrospective compensation at a higher rate has only been of concern to him since the repudiation of the February 1995 agreement.

We must additionally consider that Steve and Donna did not have to pay for rent, utilities, and food, while living with and caring for the parents. Conversely, they provided services such as home maintenance, which would not be covered by home health care or a nursing home. Therefore, it is difficult to make a valid comparison to the commercial prices and services offered into evidence of home health care or a nursing home, to the services provided by Steve.

Nevertheless, we determine on our de novo review that the district court's valuation of services of $4000 per month was within the "permissible range of evidence." *See In re Marriage of Brainard*, 523 N.W.2d 611, 616 (Iowa App.1994). We thus affirm the amount, but reverse the district court's retroactive application.

Having carefully considered the issues before us, we reverse the district court's determination no contract existed prior to February 1995. We affirm the district court's authority to order compensation at a set rate. We reverse the district court's ruling as to the retroactive application of $4000 per month, and affirm the amount of $4000 per month for future services, commencing April 1995. Costs are assessed one-half to each party.

**AFFIRMED IN PART; REVERSED IN PART.**