# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP791-CR |
| COMPLETE TITLE: | |

State of Wisconsin,
            Plaintiff-Respondent-Cross Petitioner,
      v.
Ernesto E. Lazo Villamil,
            Defendant-Appellant-Petitioner.

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 371 Wis. 2d 519, 885 N.W.2d 381
PDC No:  2016 WI App 61

| | |
|---|---|
| OPINION FILED: | July 6, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 12, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Waukesha |
| JUDGE: | Donald J. Hassin Jr. and Michael J. Aprahamian |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | KELLY, J., joined by R.G. BRADLEY, J. concurs (opinion filed). |
| DISSENTED: | ABRAHAMSON, J. dissents (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Michelle L. Velasquez* and *Civitas Law Group*, Milwaukee, and an oral argument by *Michelle L. Velasquez.*

For the plaintiff-respondent-cross petitioner, there were briefs filed by *Thomas J. Balistreri*, assistant attorney general, and *Brad D. Schimel*, attorney general, and an oral argument by *Thomas J. Balistreri.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP791-CR
(L.C. No. 2012CF1343)

STATE OF WISCONSIN : IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent-Cross Petitioner,**

    **v.**

**Ernesto E. Lazo Villamil,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**JUL 6, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J. This case examines issues that arise from statutory language that appears to make the offense of causing a death while knowingly operating a motor vehicle after revocation both a felony and a misdemeanor offense. Such an unusual scenario has generated both a petition and cross-petition for review of the court of appeals' decision.

¶2 Petitioner, Ernesto Lazo Villamil (Villamil), seeks review of a court of appeals' decision affirming a circuit court

judgment of conviction and order denying his motion for postconviction relief.[1]

¶3 Villamil asserts that the court of appeals erred because the statutory scheme underlying his conviction and sentence, Wis. Stat. § 343.44(1)(b) (2009-10) and Wis. Stat. § 343.44(2)(ar)4 (eff. March 1, 2012), is ambiguous as to whether he should have been charged with a misdemeanor or a felony. Therefore, he contends that the rule of lenity[2] applies and he should have been charged with a misdemeanor, rather than a felony.

¶4 He further argues that the statutory scheme is unconstitutional because it violates his rights to both due process and equal protection.[3] According to Villamil, the failure of a statute to give fair notice of the proscribed conduct and its consequences violates due process. Additionally, he contends that a statute violates his right to equal protection when there is no rational basis for the distinction between misdemeanor and felony penalties.

¶5 We conclude that any ambiguity in Wis. Stat. § 343.44(1)(b) (2009-10) and Wis. Stat. § 343.44(2)(ar)4 (eff.

---

[1] State v. Villamil, 2016 WI App 61, 371 Wis. 2d 519, 885 N.W.2d 381 (affirming in part and reversing in part a judgment and order for Waukesha County, Donald J. Hassin, Jr., and Michael J. Aprahamian, J.J., presiding).

[2] For a definition of the rule of lenity, see infra ¶27.

[3] The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

March 1, 2012) is clarified by the statutes' legislative history and thus the rule of lenity does not apply. We further determine that the statutory scheme does not violate his rights to either due process or equal protection. Villamil had fair notice that the prohibited conduct of committing a knowing OAR-violation causing death could result in a felony charge and there is no evidence that the charging decision was based upon an unjustifiable standard such as race, religion, or other arbitrary classification.

¶6 As cross-petitioner, the State seeks review of that part of the court of appeals decision remanding Villamil's case to the circuit court for resentencing. The court of appeals determined that the circuit court failed to consider specific factors enumerated in Wis. Stat. § 343.44(2)(b) (2013-14) at sentencing. The State, however, asserts that the statute is directory, rather than mandatory. Thus, it contends that the sentencing court was not required to consider all of the enumerated factors.

¶7 We agree with the court of appeals that Wis. Stat. § 343.44(2)(b) is mandatory and that the record at sentencing must demonstrate that the circuit court considered the factors enumerated in the statute.

¶8 Accordingly, we affirm the court of appeals decision and remand to the circuit court for a new sentencing hearing because the record fails to demonstrate that the circuit court considered the required factors pursuant to Wis. Stat. § 343.44(2)(b).

I

¶9 The underlying facts in this case are not in dispute. Villamil drove into the rear of another vehicle, killing the operator of that vehicle. At the scene of the collision, Villamil told the police officer that he did not have a valid driver's license because it had been revoked for an operating while intoxicated offense ("OWI").

¶10 Villamil was charged with operating after revocation ("OAR"), causing death, contrary to Wis. Stat. §§ 343.44(1)(b) and (2)(ar)4.[4] Wisconsin Statute § 343.44(1)(b), operating after revocation, provides in relevant part that no person may knowingly operate a motor vehicle after revocation. Additionally, Wis. Stat. § 343.44(2)(ar)4, provides that a person who violates sub. (1)(b) and causes the death of another person, shall be charged with a misdemeanor, except "if the person knows at the time of the violation that his or her operating privilege has been revoked, the person is guilty of a Class H Felony."

¶11 In exchange for his no-contest plea, the State recommended a prison sentence, but agreed not to argue for a particular length of time. During the plea colloquy the circuit court discussed the factual basis and elements of the offense. Villamil told the court he was aware that his license had been revoked for an alcohol-related offense.

---

[4] Villamil was originally charged with one count of OAR, causing great bodily harm, contrary to Wis. Stat. § 343.44(1)(b) and (2)(ar)3.(1). Following the death of the driver of the other vehicle, the State filed an amended complaint charging Villamil with "knowingly operating while revoked-causing death," contrary to Wis. Stat. § 343.44(1)(b) and (2)(ar)4(2).

¶12 Neither the complaint, nor anything else in the record alleged that the collision was related to impaired driving. The accident reconstruction report stated that there was "no evidence to suggest that Mr. Lazo Villamil had diminished driving abilities."

¶13 Defense counsel argued for a term of probation with an imposed and stayed sentence because Villamil had already been in the county jail for fifteen months. Counsel's argument highlighted mitigating factors, such as Villamil's completion of treatment and other programming, including obtaining his GED. Additionally, he argued that Villamil met all the requirements to reinstate his license, but was unable to do so because of a change in the law.

¶14 At sentencing, the court considered the seriousness of the offense, the need to protect the public, and the rehabilitative needs of the defendant. It observed that the felony offense for a knowing violation of OAR-causing death was new and that the statute's purpose was to protect the public from people whose licenses had been revoked. The court further stated that it could not understand why Villamil was driving on the day of the collision. It opined that matters were made worse because he had been twice convicted of drunk driving and previously served time in jail for an OAR conviction.

¶15 The sentencing court commented on the continued problem of people driving without a license, and concluded that all it could do "to respond to the needs of the community as best it can under facility of the law" was to impose the maximum term of imprisonment. It concluded that "this is a serious

5

operating after revocation" and sentenced Villamil to the maximum sentence of six years, with three years of initial confinement and three years of extended supervision.

¶16 Villamil filed a postconviction motion arguing that Wis. Stat. § 343.44(2)(ar)4 is ambiguous and unconstitutional. Additionally, he requested resentencing, asserting that the sentencing court had not provided an adequate explanation of why it imposed the maximum penalty. The circuit court denied Villamil's postconviction motion in its entirety.

¶17 The court of appeals determined that the rule of lenity was not applicable and the statutory scheme under which Villamil was convicted and sentenced is constitutional. State v. Villamil, 2016 WI App 61, ¶2, 371 Wis. 2d 519, 885 N.W.2d 381. However, the court of appeals remanded for a new sentencing hearing because it concluded that the evidentiary record failed to demonstrate that the circuit court considered the enumerated factors set forth in Wis. Stat. § 343.44(2)(b). Id.

II

¶18 The interpretation of a statute presents a question of law that we decide independently of the decisions rendered by the circuit court and the court of appeals. State v. Harrison, 2005 WI 5, ¶37, 360 Wis. 2d 246, 858 N.W.2d 372.

¶19 Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. It is interpreted in the context in which it is used, in relation to the language of surrounding or closely-related statutes. Id.,

¶46. We interpret a statute reasonably in order to avoid absurd results. Id.

¶20 A statute is ambiguous if it is capable of being understood in two or more ways by reasonably well-informed persons. Id., ¶47. When a statute is ambiguous, we may consult legislative history as part of our statutory analysis. Id., ¶51.

¶21 We are also tasked with reviewing whether the statutory scheme is unconstitutional. Legislative enactments are presumed constitutional and the party challenging the constitutionality must demonstrate the statute is unconstitutional beyond a reasonable doubt. State v. McManus, 152 Wis. 2d 113, 129, 447 N.W.2d 654 (1989).

¶22 Finally, we are asked to determine whether Wis. Stat. § 343.44(2)(b) requires a sentencing court to consider on the record the factors enumerated in the statute. "To determine how a sentencing court satisfies its obligation to consider any applicable sentencing guideline," we must interpret the relevant statutory provision. State v. Grady, 2007 WI 81, ¶14, 302 Wis. 2d 80, 734 N.W.2d 364. As set forth above, statutory interpretation is a matter of law we review independently of the determinations rendered by the circuit court and the court of appeals. Id.

¶23 We will remand for a new sentencing hearing only if the circuit court erroneously exercised its discretion at sentencing. State v. Gallion, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197 (citing McCleary v. State, 49 Wis. 2d 263, 278, 182 N.W.2d 512 (1971)). A court erroneously exercises its

7

sentencing discretion when it fails to consider factors it is required by statute to consider. LaRocque v. LaRocque, 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987).

                              III

¶24 We begin by setting forth the relevant statutory language. Villamil was charged with a knowing violation of OAR-causing death, contrary to Wis. Stat. §§ 343.44(1)(b) and (2)(ar)4. Wisconsin Stat. § 343.44(1)(b), knowingly operating after revocation, provides in relevant part:

> No person whose operating privilege has been duly revoked under the laws of this state may knowingly operate a motor vehicle upon any highway in this state during the period of revocation . . . .

(Emphasis added).

Additionally, Wis. Stat. § 343.44(2)(ar)4. provides:

> Any person who violates sub. (1)(b) and, in the course of the violation, causes the death of another person shall be fined not less than $7,500, nor more than $10,000 or imprisoned for not more than one year in the county jail or both, except that, if the person knows at the time of the violation that his or her operating privilege has been revoked, the person is guilty of a Class H Felony.

(Emphasis added).

¶25 According to Villamil, the statutory scheme is ambiguous because it provides that a person who commits the offense of causing death while knowingly operating a motor vehicle after revocation could be charged with either a misdemeanor or a felony. He asserts that the first part of the statute sets forth a misdemeanor sentence with a fine of "not less than $7,500, nor more than $10,000 or imprison[ment] for not more than one year in the county jail or both . . . ." Wis.

                              8

Stat. § 343.44(2)(ar)4. However, the second part of the statute classifies the offense as a "Class H felony." Id.

A

¶26 The problem that Villamil identifies with Wis. Stat. § 343.44(2)(ar)4. is that "knowledge" of revocation is already required as an element of the misdemeanor charge because a person cannot violate Wis. Stat. § 343.44(1)(b), the offense for operating after revocation, unless he knows that his license has been revoked. Yet, the second part of the statutory provision also contains a knowledge requirement. He asserts that this interaction between the statutes makes the "knowledge" distinction between the misdemeanor and felony charge illusory. Accordingly, Villamil contends that the statute is ambiguous and that the rule of lenity should apply because the same offense is punishable as either a misdemeanor or a felony.

¶27 The rule of lenity "provides generally that ambiguous penal statutes should be interpreted in favor of the defendant." State v. Cole, 2003 WI 59, ¶67, 262 Wis. 2d 167, 663 N.W.2d 700. However, the rule of lenity applies only if two conditions are met: (1) the penal statute is ambiguous; and (2) we are unable to clarify the intent of the legislature by resort to legislative history. Id.

¶28 It is undisputed that the statute is ambiguous. The State, however, contends that this court should resolve any ambiguity by finding that the knowledge element of the offense of OAR has been impliedly repealed.

¶29 We agree with the parties that the statute is ambiguous. Here, the interaction between Wis. Stat.

9

§ 343.44(1)(b) and Wis. Stat. § 343.44(2)(ar)4 creates ambiguity because the same offense is punishable as either a misdemeanor or a felony. DOC v. Schwarz, 2005 WI 34, ¶14, 279 Wis. 2d 223, 693 N.W.2d 703 ("ambiguity can be found . . . by the words of the provision as they interact with and relate to other provisions in the statute and to other statutes.") (quotation marks and quoted source omitted).

¶30 Because we determine that the interaction of the statutory scheme renders it ambiguous, we turn next to the relief requested by the parties. First, we do not agree with Villamil that the rule of lenity should be applied in this case. Although the rule of lenity provides generally that ambiguous penal statutes should be interpreted in favor of the defendant, it applies only if a penal statute is ambiguous and "we are unable to clarify the intent of the legislature by resort to legislative history." Cole, 262 Wis. 2d 167, ¶67.

¶31 Examining the legislative history of Wis. Stat. § 343.44 clarifies the intent of the legislature that persons who commit a knowing violation of OAR-causing death be charged with a Class H felony. The Legislative Reference Bureau analysis for 2011 Assembly Bill 80 ("A.B. 80") recognized that under the law as it existed prior to enactment of 2011 Wisconsin Act 113 ("Act 113"), a defendant who committed a knowing OAR violation was guilty of "a Class A misdemeanor, punishable by a maximum fine of $10,000 or a maximum term of imprisonment of nine months or both." See Drafting file for 2011 Wis. Act. 113, Analysis by the Legislative Reference Bureau of 2011 A.B. 80, Legislative Reference Bureau, Madison, Wis.; see also Wis. Stat.

10

§ 343.44(2)(b) (2009-10). It explained that A.B. 80 "creates new penalties for [OAR] violations in which the person, in the course of the violation, causes . . . death to another person." LRB Analysis of A.B. 80, p. 2 (emphasis added).

¶32 The LRB's analysis additionally observed that under A.B. 80, the penalty is intended to increase if a person committed a knowing violation:

> If the person causes the death of another in the course of the OWL or OWS violation, the person: 1) must forfeit not less than $7,500 nor more than $10,000 _if the person did not know_, respectively, that he or she did not possess a valid operator's license or that his or her operating privilege was suspended; or 2) is guilty of a Class H felony _if the person knew_. A Class H felony is punishable by a maximum fine of $10,000 or a maximum term of imprisonment of six years or both . . . If the person causes the death of another in the course of the OAR violation, the person: 1) must be fined not less than $7,500 nor more than $10,000 or imprisoned for not more than one year or both _if the person did not know_ that his or her operating privilege was revoked; or 2) is guilty of a Class H felony _if the person knew_.

LRB Analysis of A.B. 80 at 2-3 (emphasis added).

¶33 Thus, the legislative history clarifies that the legislature intended to write these provisions so that when a person causes the death of another while committing an OAR violation, the penalty would be less severe if the defendant did

not know his license was revoked and more severe if he knew.[5] Specific to this case, the legislative history shows the legislature's intent to treat an OAR-causing death offense as a misdemeanor if the defendant did not know his license had been revoked and as a Class H felony if he knew.

¶34 It appears, however, that the legislature failed to remove the "knowledge" element from the misdemeanor language of Wis. Stat. § 343.44(1)(b) and thus failed to accomplish the first part of this intent. Nevertheless, in his case, Villamil caused the death of another and knew his license had been revoked. The legislative history shows, and Villamil acknowledges, that the legislature intended to treat his offense as a Class H felony. Given this clarification, the rule of lenity cannot be invoked.

B

¶35 The State urges this court to conclude that the knowledge element of the offense of operating after revocation has been impliedly repealed. According to the State, repeal of

---

[5] Based on the LRB Analysis of A.B. 80 and the Legislative Council Memo regarding Act 113, it appears that the legislature intended that that the offenses of operating while suspended and operating after revocation have symmetrical penalties. See LRB Analysis of A.B. 80 at 2-3; see also Wis. Leg. Council, Act Memo, 2011 Wis. Act. 113. The legislature made the offense of operating while suspended a non-knowing offense. See Wis. Stat. § 343.44(1)(a) ("A person's knowledge that his or her operating privilege is suspended is not an element of the offense under this paragraph."). However, the legislature failed to similarly revise the offense of operating after revocation pursuant to Wis. Stat. § 343.44(1)(b).

12

the element of knowledge in the offense of operating after revocation is implied by the legislative history of Act 113.

¶36 Although we agree that the legislative history indicates that the legislature intended to create a misdemeanor offense for persons who did not know their license had been revoked, we are tasked with interpreting the words that the legislature wrote. Kalal explained that "[i]t is the enacted law, not the unenacted intent, that is binding on the public." Id., ¶46. Here, the legislature wrote the statutory scheme so that knowledge of revocation status is an element of both the misdemeanor and felony provision. As set forth above, in this case Villamil was charged with the felony offense intended by the legislature for a knowing violation of OAR-causing death.

¶37 We further observe that implied repeal is a disfavored rule of statutory construction. See, e.g., Heaton v. Larsen, 97 Wis. 2d 379, 392-93 ("Repeals by implication are not favored in the law."). If the legislature desires to create a misdemeanor offense for an unknowing violation, as the legislative history indicates, then the legislature may do so by future amendment of the statutory text. See State v. Reagles, 177 Wis. 2d 168, 176, 501 N.W.2d 861 (1993) ("If a statute fails to cover a particular situation and the omission should be cured, the remedy lies with the legislature, not the courts."). Thus, we decline the State's invitation to rewrite the statute in order to create an offense for an "unknowing" violation and hold the application of Wis. Stat. §§ 343.44(1)(b) and (2)(ar)4. to the language the legislature wrote. See State v. Jadowski, 2004 WI 68, 273 Wis. 2d 418, 680 N.W.2d 810 (it is legislature's broad power to

13

promote the public welfare that authorizes it to create and define criminal offenses).

¶38 Accordingly, we agree with the court of appeals that the rule of lenity does note apply here. We hold the application of Wis. Stat. §§ 343.44(1)(b) and (2)(ar)4. to the language the legislature wrote——that the defendant's "knowledge" of his revocation status is an element of both the misdemeanor as well as the felony provision. It was the legislature's intent to apply the more severe penalty to Villamil's offense and he was appropriately charged with a Class H felony.

IV

¶39 We turn next to Villamil's argument that statutes which prescribe significantly different penalties for the exact same conduct cannot be applied constitutionally. According to Villamil, the failure of a statute to give fair notice of the proscribed conduct and the consequences violates due process. Additionally, he contends that a statute violates equal protection when there is no rational basis for the distinction between misdemeanor and felony penalties.

¶40 Our analysis of Villamil's constitutional arguments begins with the observation that legislative enactments are presumed constitutional and the party challenging the constitutionality must prove the statute unconstitutional beyond a reasonable doubt. McManus, Wis. 2d at 129. If possible, we construe the statute to preserve it. State v. Popanz, 112 Wis. 2d 166, 172, 332 N.W.2d 750 (1983).

¶41 Due process requires that penal statutes provide fair notice of the conduct they seek to proscribe. State v. Nelson,

14

2006 WI App 124, ¶41, 294 Wis. 2d 578, 718 N.W.2d 168. This notice does not have to be provided with absolute clarity. Id., ¶36. Additionally, when considering an equal protection challenge that does not involve a suspect or quasi-suspect classification, "the fundamental determination to be made . . . is whether there is arbitrary discrimination in the statute . . . and thus whether there is a rational basis which justifies a difference in rights afforded." In re Joseph E.G., 2001 WI App 29, ¶8, 240 Wis. 2d 481, 623 N.W.2d 137.

¶42 This court's decision in State v. Cissell, 127 Wis. 2d 205, 378 N.W.2d 691 (1985), guides our analysis of Villamil's constitutional challenge. Cissell asserted, and this court agreed, that the elements of felony abandonment were substantially identical to the elements of misdemeanor failure to support. Id. at 214. He argued that statutes with identical substantive elements but different penalty schemes violate due process and equal protection. Id.

¶43 Similar to this case, Cissell contended that the State violated his constitutional rights by charging him with a felony rather than a misdemeanor. Id. Cissell further argued that "disparate sentencing exposures for crimes with identical elements are irrational and arbitrary." Id.

¶44 Following United States v. Batchelder, 442 U.S. 114 (1979), the Cissell court determined that "identical element crimes with different penalties do not violate due process or equal protection." 127 Wis. 2d 215. It explained that the Batchelder court concluded that overlapping criminal statutes with different penalty schemes "do not violate constitutional

15

principles unless the prosecutor selectively bases the charging decision upon an unjustifiable standard such as race, religion, or other arbitrary classification." Id. (citing Batchelder, 442 U.S. at 125 n.9).

¶45 Cissell reasoned that "[T]he fact that the defendant's conduct may be chargeable under either of two statutes does not make prosecution under one or the other statute improper per se . . . ." 127 Wis. 2d 216. It explained that "the focus instead is on whether the prosecutor unjustifiably discriminated against any class of defendants." Id. "Differences in treatment between individuals . . . are determined as a matter of prosecutorial discretion. . . . [S]uch discretion is not unconstitutional unless the prosecutor discriminates on the basis of unjustifiable criteria." Id.

¶46 Thus, in Cissell we concluded that "[a]lthough [the statutes] are identical crimes with different penalties, the state does not deny equal protection or due process by charging defendants with the more serious crime." Id. at 224. This court determined that the statute at issue in Cissell did not violate due process because it "provide[d] adequate notice of the conduct proscribed by the statute and those who must obey it." Id. at 225. We explained that "[i]t also provides a defined standard for those who must enforce the law and adjudicate guilt." Id.

¶47 In this case, Villamil makes no suggestion the prosecutor chose to charge him with a felony violation instead of a misdemeanor based upon his race, religion, or other arbitrary classification. Accordingly, under Cissell, neither

16

the existence of different penalties for the same violation nor the prosecutor's decision to charge Villamil with a felony violates his rights to due process or equal protection.

¶48 Villamil attempts to distinguish the facts of this case from Cissell by arguing that in Cissell there were two different offenses with substantively identical elements, where here there is one offense within the same statutory provision containing two distinct punishments. Although Villamil points to a Utah Supreme Court case as support for this distinction, we are not convinced that a meaningful distinction exists between the circumstances here and those in Cissell. See State v. Williams, 2007 UT 98, ¶1, 175 P.2d 1029.

¶49 Whether there is one criminal statute or two, both this case and Cissell involve criminal statutes with substantially identical elements where prosecutors have discretion to decide whether they will charge a defendant with a misdemeanor or a felony. Although a defendant could be charged with a misdemeanor instead of a felony for a knowing violation of OAR-causing death, the public is on notice that this offense may be punished as a Class H felony pursuant to Wis. Stat. §§ 343.44(1)(b) and (2)(ar)4. Because Villamil knew he was operating after his license was revoked, the statutes provide sufficient notice that this violation could be charged as a felony.

¶50 Accordingly, we determine that Villamil has failed to meet his burden of demonstrating that the statute is unconstitutional beyond a reasonable doubt.

V

17

¶51  We turn to address the State's cross-petition, which asserts that the sentencing court was not required to consider all of the statutorily enumerated factors on the record.

¶52  Wisconsin Stat. § 343.44(2)(b) provides that the court "shall review the record and consider the following":

1.  The aggravating and mitigating circumstances in the matter, using the guidelines described in par. (d).

2.  The class of vehicle operated by the person.

3.  The number of prior convictions of the person for violations of the section within the 5 years preceding the person's arrest.

4.  The reason that the person's operating privilege was revoked, or the person was disqualified or ordered out of service, including whether the person's operating privilege was revoked for an offense that may be counted under s. 343.307(2).

5.  Any convictions for moving violations arising out of the incident or occurrence giving rise to sentencing under this section.

¶53  In Grady, this court determined that "a circuit court satisfies its [statutory] obligation when the record of the sentencing hearing demonstrates that the court actually considered the sentencing guidelines and so stated on the record."  302 Wis. 2d 80, ¶3.  Similar to the statute addressed in Grady, Wis. Stat. § 343.44(2)(b) states that "[i]n imposing sentence under par. (ar) or (br) the court shall . . . consider the following," and then lists the specifically identified

18

factors to be considered.[6] Villamil asserts that the circuit court failed to address several factors at sentencing.

¶54 The State does not dispute that the circuit court failed to enumerate all of the statutorily-enumerated sentencing factors on the record. Instead, it contends that at sentencing Wis. Stat. § 343.44(2)(b) should be construed to be directory, rather than mandatory. Although the State acknowledges that the word "shall" is presumed to be mandatory, it asserts that there is no per se rule to determine which way the word is used. See, e.g., State ex rel. Marburry v. Macht, 2003 WI 79, ¶16, 262 Wis. 2d 720, 665 N.W.2d 155; State v. R.R.E., 162 Wis. 2d 698, 707, 470 N.W.2d 283 (1991). Thus, according to the State, in determining whether the legislature intended "shall" to be mandatory or directory, we should consider the objectives intended to be accomplished by the statute and the potential consequences of each interpretation.

¶55 The word "shall" can be construed as directory if "such a construction is 'necessary to carry out the intent of the legislature.'" Warnecke v. Estate of Warnecke, 2006 WI App 62, ¶12, 292 Wis. 2d 438, 713 N.W.2d 109 (quoting Karow v. Milwaukee Co. Civil Serv. Comm'n, 82 Wis. 2d 565, 571 N.W.2d 214 (1978)). According to the State, interpreting the word "shall" as mandatory leads to an unreasonable result because similar

---

[6] The statute considered in State v. Grady, 2007 WI 81, 302 Wis. 2d 80, 734 N.W.2d 364, provided that "the court shall consider . . . [i]f the offense is a felony, the sentencing guideline." See Wis. Stat. § 973.017(2)(a) (2003-04).

offenses, such as operating while suspended, do not require consideration of these factors. See Wis. Stat. §§ 343.44(1)(a).

¶56 However, we agree with the court of appeals that the State's argument underscores that the legislature intended to treat OAR offenses differently. Villamil, 371 Wis. 2d 519, ¶26. We do not assume that the legislature chose the word "shall" lightly, but instead assume it intended to require courts to consider the factors under Wis. Stat. § 343.44(2)(b), for a knowing violation of OAR-causing death.

¶57 Additionally, this case is distinguishable from other cases in which courts have determined that an interpretation of "shall" as mandatory would lead to an absurd result. See, e.g., In re Paternity of S.A. II, 165 Wis. 2d 530, 534-36, N.W.2d 21 (Ct. App. 1991). For example, in child custody matters, Wis. Stat. ch. 767 previously provided that "the court shall incorporate" the terms of a stipulation regarding a modification of placement or custody into a revised order. Id. However, the court of appeals reasoned that the best interests of a child are the primary consideration in custody determinations, regardless of the parties' stipulation. Id. Thus, it concluded that it would be an absurd result if "shall" were interpreted to prohibit an examination of the best interests of the child. Id.; see also Eby v. Kozarek, 153 Wis. 2d 75, 80-81, 450 N.W.2d 249 (1990) (use of the word "shall" for statutory time limit was directory because construing the statute as mandatory would lead to an overly harsh result).

¶58 No such consideration applies here. Indeed, all of the factors listed here are relevant to a sentencing decision

for a knowing violation of OAR-causing death. These factors, such as aggravating and mitigating circumstances, the class of the vehicle, prior convictions, the reason for revocation, and any convictions for moving violations arising out of the incident are all relevant to punishment for this specific offense. Accordingly, making their consideration mandatory does not lead to an absurd result.

¶59 Finally, "support is given to a mandatory interpretation of 'shall' when the legislature uses the words 'shall' and 'may' in a particular statutory section, indicating the legislature was aware of the distinct meanings of the words." State ex rel. Marberry v. Macht, 2003 WI 79, ¶16, 262 Wis. 2d 720, 665 N.W.2d 155. In this case, the legislature used the word "shall" with regard to the factors set forth in Wis. Stat. § 343.44(2)(b), but used "may" in Wis. Stat. § 343.44(2)(c), which provides that "penalties may be enhanced by imprisonment and additional fines . . . ." Thus, "we can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings." State ex rel. Marberry v. Macht, 2003 WI 79, ¶16. (quotation marks and quoted source omitted).

¶60 In light of the above, we conclude that the State has failed to rebut the presumption that "shall" is mandatory here. We thus determine that Wis. Stat. § 343.44(2)(b) is mandatory and that the record at sentencing must demonstrate that the circuit court considered the factors enumerated in the statute.

¶61 The State does not dispute that the circuit court failed to express its consideration of the statutory factors on

the record. Nor does it contend that the circuit court considered those factors, but simply failed to reference Wis. Stat. § 343.44(2)(b) on the record. We therefore remand for a new sentencing hearing because the record in this case fails to demonstrate that the court considered the required factors under Wis. Stat. § 343.44(2)(b).

V

¶62 In sum, we conclude that any ambiguity in Wis. Stat. § 343.44(1)(b) (2009-10) and Wis. Stat. § 343.44(2)(ar)4 (eff. March 1, 2012) is clarified by the statutes' legislative history and thus the rule of lenity does not apply. We further determine that the statutory scheme does not violate his rights to either due process or equal protection. Because Villamil knew he was operating after his license was revoked, the statutes provide fair notice that the prohibited conduct of committing a knowing OAR-violation causing death could result in a felony charge. There is no evidence that the charging decision was based upon an unjustifiable standard such as race, religion, or other arbitrary classification.

¶63 Additionally, we agree with the court of appeals that Wis. Stat. § 343.44(2)(b) is mandatory and that the record at sentencing must demonstrate that the circuit court considered the factors enumerated in the statute.

¶64 Accordingly, we affirm the court of appeals decision and remand to the circuit court for a new sentencing hearing because the record fails to demonstrate that the circuit court considered the required factors pursuant to Wis. Stat. § 343.44(2)(b).

22

*By the Court.*—The decision of the court of appeals is affirmed.

¶65 DANIEL KELLY, J. *(concurring)*. Both the State and Mr. Villamil want us to find an ambiguity in Wis. Stat. § 343.44, but for different reasons. The State would create out of this ambiguity a new criminal offense——strict-liability Operating After Revocation. Mr. Villamil, on the other hand, would use the ambiguity to secure a misdemeanor punishment instead of a felony sentence. The court agreed the statute is ambiguous, but without showing it to be so. Consequent upon this unexplained premise, it embarked on a wholly unnecessary exploration of legislative history, the rule of lenity, and the due process implications of prosecutorial discretion. As a result, I cannot join Part III of the court's opinion.

I

¶66 I disagree with the court's assumed premise. It said "the interaction between Wis. Stat. § 343.44(1)(b) and Wis. Stat. § 343.44(2)(ar)4 creates ambiguity because the same offense is punishable as either a misdemeanor or a felony." Majority op., ¶29. But the plain language of the statute does <u>not</u> allow such an option. It provides for a felony or nothing at all.

¶67 Notwithstanding our fretting, applying Wis. Stat. § 343.44 to Mr. Villamil is entirely straightforward. The first step, of course, is determining the meaning of the statute, which begins with the language the legislature used. If there is a plain meaning to be found there, that is where the analysis

1

also ends.[1] Mr. Villamil's situation requires us to consider the statute's definition of the crime with which he is accused (Wis. Stat. § 343.44(1)(b)), as well as the penalty to which he is subject (Wis. Stat. § 343.44(2)(ar)4.).

¶68 The offense of "Operating After Revocation" is defined as follows: "No person whose operating privilege has been duly revoked under the laws of this state may <u>knowingly</u> operate a motor vehicle upon any highway in this state during the period of revocation . . . ." Wis. Stat. § 343.44(1)(b) (emphasis added). The penalty for this offense depends, in part, on whether the person harmed others while committing the offense. If the driver causes the death of another, as Mr. Villamil did, the statute provides the following penalty:

> Any person who violates sub. (1)(b) and, in the course of the violation, causes the death of another person shall be fined not less than $7,500 nor more than $10,000 or imprisoned for not more than one year in the county jail or both, <u>except that</u>, if the person knows at the time of the violation that his or her operating privilege has been revoked, the person is guilty of a Class H felony.

Wis. Stat. § 343.44(2)(ar)4 (emphasis added).

¶69 Mr. Villamil says this language prevents him from knowing whether he is subject to a misdemeanor or a felony penalty. But if we give careful attention to how the actual

---

[1] <u>State ex rel. Kalal v. Cir. Ct. for Dane Cty.</u>, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" (quoting <u>Seider v. O'Connell</u>, 2000 WI 76, ¶43, 236 Wis. 2d 211, 232, 612 N.W.2d 659)).

language of the offense and penalty provisions of this statute operate, it will become almost immediately apparent that this isn't so. There are four words in this statute that are especially important to its proper functioning. The first is "knowingly," and it appears in the definition of the offense. The next two are "except that"——they appear in the penalty provision and serve as the hinge point for the gate that gives access to either the misdemeanor or the felony penalty. The last is "know," and it helps tell us which way the gate should swing.

¶70 I begin with the definition of the offense, where we find that Operating After Revocation is not a strict liability crime. It requires that the defendant know his privilege has been revoked: "No person whose operating privilege has been duly revoked under the laws of this state may <u>knowingly</u> operate a motor vehicle . . . during the period of revocation . . . ." Wis. Stat. § 343.44(1)(b) (emphasis added). Thus, if the person does not know he is operating a motor vehicle while his operating privileges are revoked, he cannot be prosecuted under this statute at all. Mr. Villamil knew he was driving while his operating privilege was revoked——as did everyone else convicted under this version of the statute——and so he was properly convicted of this offense.

¶71 Upon conviction, the court must proceed to the penalty phase. Because Mr. Villamil caused a death while operating with revoked privileges, we turn to Wis. Stat. § 343.44(2)(ar)4. for the appropriate penalty. There is no doubt this penalty

3

provision describes both misdemeanor and felony sentences. But there is also no doubt that it is impossible to be sentenced as a misdemeanant under Wis. Stat. § 343.44(2)(ar)4.

¶72 The key to applying this penalty provision lies in the hinge point created by the "except that" clause in subsection (2)(ar)4. The misdemeanor penalty lies on one side of it, the felony on the other. The condition identified by the "except that" clause controls which way the gate swings. Satisfy the condition, and the defendant is a felon. Leave it unsatisfied, and the defendant is instead a misdemeanant.

¶73 This condition is where we come across the fourth important word——"know." Here it is in context: "[E]xcept that, if the person knows at the time of the violation that his or her operating privilege has been revoked . . . ." Wis. Stat. § 343.44(2)(ar)4. So the condition that controls which way the gate swings is whether the defendant knew, or did not know, that he was operating his vehicle after revocation. Mr. Villamil satisfied the condition because he knowingly operated his vehicle after revocation.

¶74 Mr. Villamil is not the only one who will satisfy this condition upon arriving at subsection (2)(ar)4. In fact, everyone who reaches this subsection satisfies the condition. For the gate to swing open on the misdemeanor penalty, the defendant who stands for sentencing must not have known he had operated his vehicle after revocation of his driving privileges. But we know that will never happen because "knowing" is an element of the offense——so the gate is always open only to the

4

felony penalty. Thus, so long as the statute remains as it is, there will never be a pathway to the misdemeanor penalty.

¶75 So the only way to access the misdemeanor portion of subsection (2)(ar)4.——as written——is to stop reading it before reaching the "except that" language. But that is no way to read a sentence. One must persevere to the period, and there is no way to get there without encountering the exception.

¶76 That brings me back to the alleged ambiguity, which—— remember——is supposed to be that a prosecutor could opt between misdemeanor and felony penalties. Because the statute's explicit terms welded the gate closed on the misdemeanor option, the plain language can yield no such prosecutorial discretion. So it turns out the alleged ambiguity, the thing we spent so much time and effort fixing, is a problem of our own creation. We called it into existence by substantially re-writing subsection (2)(ar)4. To make the misdemeanor and felony sentences equally available, we had to make that statute say this:

> Any person who violates sub. (1)(b) and, in the course of the violation, causes the death of another person shall be fined not less than $7,500 nor more than $10,000 or imprisoned for not more than one year in the county jail or both, ~~except that, if the person knows at the time of the violation that his or her operating privilege has been revoked,~~ <u>or</u> the person is guilty of a Class H felony.

We didn't explain why we should do this, nor did we even acknowledge we did it. When the curtain went up and our analysis started, the statute made its first appearance with

5

this meaning already attached to it. Responsibility for that meaning lies not with any deus ex machina, it lies with us.

¶77 It is true that, one way or another, some part of subsection (2)(ar)4. is going to be inoperable. It will happen either because we recraft the language, or because we apply the language as adopted by the legislature. Unfortunately, the court chose the former. It struck out the "except that" clause that previously governed how the gate swings and transferred its erstwhile function to the State's prosecutors. We are supposed to be chary of such readings. Kalal, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.").

¶78 The part of subsection (2)(ar)4. that is inoperable is the part providing for a misdemeanor penalty. That inoperability, however, does not result from judicial language-tweaking. It results from the inexorable operation of the statute's duly adopted words. The legislators orphaned the misdemeanor penalty, but it was theirs to orphan and it is no business of ours to countermand them. We do not dishonor Kalal's admonition by applying the statute as written because we did not create the surplusage. It was already there when Mr. Villamil brought it to us. If there is to be surplusage, let it be a result of the legislature's work, not ours.

¶79 As a practical matter, we have a pretty good idea of how this problem came to be; it was most likely a drafting error. See Majority op., ¶¶31-34. The legislature apparently aimed at changing "Operating After Revocation" to a strict

6

liability offense, but with a more onerous penalty for knowing violations. It didn't quite get there. We do not, however, have the authority to complete what it started. Therefore, because we can apply the language as it exists, and the result is neither irrational nor absurd, that is what we should have done. Because we didn't, I cannot join Part III of the court's opinion.

II

¶80 Perhaps the court reached the conclusion it did because, at its core, the analysis rests on an enigma: The court said Wis. Stat. § 343.44 is ambiguous, but it did not say why. Ambiguity arises, of course, when a statute "is capable of being understood by reasonably well-informed persons in two or more senses." State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶47, 271 N.W.2d 633, 681 N.W.2d 110. If that occurs, we apply our disambiguation canons to get at the proper meaning. The first step, however, is diagnostic——we must determine whether the statute can carry multiple meanings.

¶81 The court skipped this step and jumped straight to the conclusion that a statute giving prosecutors discretion to seek either misdemeanor or felony penalties is ambiguous. But if that is true, then our opinion thoroughly undercuts itself. While naming this discretion an ambiguity, we simultaneously affirmed that it is just fine so long as the prosecutor does not unjustifiably discriminate against the defendant in making his choice. Quoting State v. Cissell, we said "the fact that the defendant's conduct may be chargeable under either of two

7

statutes does not make prosecution under one or the other statute improper per se . . . ." Majority op., ¶45 (quoting State v. Cissel, 127 Wis. 2d 205, 216, 378 Wis. 2d 691 (1985)). We didn't so much as breathe the word "ambiguous" in that case. And for good reason——Cissel relied largely on United States v. Batchelder, in which the Supreme Court ruled that no ambiguity arises from statutes that provide different penalties for the same conduct. 442 U.S. 114, 121 (1979).

¶82 So our opinion is at odds with itself. Charging options of this nature are either ambiguities in need of resolution (pace Batchelder), or they are legitimate grants of discretion to prosecutors. They can't be both. Thus, when we say Wis. Stat. § 343.44 "creates ambiguity because the same offense is punishable as either a misdemeanor or a felony," we are creating an ambiguity. Our opinion could be understood as asserting that a statute that allows for misdemeanor/felony charging options is, on that basis alone, ambiguous. Or it could be understood as assuming the existence of ambiguous (and unidentified) language that could be read as allowing for such charging options. If it is the former, our opinion refutes itself. If it is the latter, we should have identified the ambiguous language and described the two senses in which it could be understood. Because we didn't, the issue around which all else revolved——the statute's alleged ambiguity——remained an enigma to the last.

8

III

¶83 Because I do not agree that Wis. Stat. § 343.44 is ambiguous, I cannot join Part III of the court's opinion. However, I join the rest of it, and the mandate, because the plain and unambiguous language of Wis. Stat. § 343.44 requires that Mr. Villamil receive a felony sentence.

¶84 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

¶85 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I usually do not persist in a dissent. Ordinarily after dissenting I am guided by the precedent established by a majority opinion. In the instant case, however, I am persuaded that my dissent in State v. Cissell, 127 Wis. 2d 205, 228, 378 N.W.2d 691 (1985), continues to have merit.

¶86 I wrote then and repeat now: Although broad prosecutorial discretion is an accepted part of our criminal justice system, the legislature's adoption of criminal statutes identical except for penalty is an unlawful delegation of power to the executive branch of government contrary to the separation of powers doctrine encompassed in the Wisconsin Constitution. There is no rational basis for two criminal statutes that are identical except for their respective penalties, and resting such unbridled discretion in the prosecuting attorney violates our concept of fundamental fairness and equal protection of the laws. Wis. Const. art. I, §§ 1, 8(1).

¶87 I agree with the dissection of United States v. Batchelder, 442 U.S. 114 (1979), by Professors Wayne LaFave, Jerold Israel, Nancy King, and Orrin S. Kerr in 4 Criminal Procedure § 13.7(a) at 284-88 (4th ed. 2015). The instant case is the third type of statute discussed by the professors:

> In assaying the Batchelder reasoning, it is useful to think about three types of situations in which a defendant's conduct may fall within two statutes. They are: (1) where one statute defines a lesser included offense of the other and they carry different penalties (e.g., whoever carries a concealed weapon is guilty of a misdemeanor; a convicted felon who carries a concealed weapon is guilty of a felony); (2) where the statutes overlap and carry different penalties

1

(e.g., possession of a gun by a convicted felon, illegal alien or dishonorably discharged serviceman is a misdemeanor; possession of a gun by a convicted felon, fugitive from justice, or unlawful user of narcotics is a felony); (3) where the statutes are identical (e.g., possession of a gun by a convicted felon is a misdemeanor; possession of a gun by a convicted felon is a felony). The Court in Batchelder had before it a situation falling into the second category, but [it] seems to have concluded that the three statutory schemes [were] indistinguishable for purposes of constitutional analysis. But in terms of either the difficulties which are confronted at the legislative level in drafting statutes or in the guidance which is given to a prosecutor by the legislation, the three schemes are markedly different.

The first of the three is certainly unobjectionable. Such provisions are quite common (robbery-armed robbery; battery-aggravated battery; joyriding-theft; housebreaking-burglary), and usually are a consequence of a deliberate attempt by the legislature to identify one or more aggravating characteristics which in the judgment of the legislature should ordinarily be viewed as making the lesser crime more serious. They afford guidance to the prosecutor, but——as noted in Batchelder——do not foreclose the prosecutor from deciding in a particular case that, notwithstanding the presence of one of the aggravating facts, the defendant will still be prosecuted for the lesser offense.

By contrast, the third of the three is highly objectionable. It is likely to be a consequence of legislative carelessness, and even if it is not such a scheme serves no legitimate purpose. There is nothing at all rational about this kind of statutory scheme, as it provides for different penalties without any effort whatsoever to explain a basis for the difference. It cannot be explained in terms of giving assistance to the prosecutor. "Where statutes are identical except for punishment, the prosecutor finds not the slightest shred of guidance." It confers discretion which is totally unfettered and which is totally unnecessary. And thus the Court in Batchelder is less than convincing in reasoning that this third category is unobjectionable simply because in other instances, falling into the first category, the need

2

for discretionary judgments by the prosecutor has not been and cannot be totally eliminated.

As for the second of the three categories, it clearly presents a harder case. Here as well, the dilemma is likely to have been created by legislative carelessness . . . . [O]verlapping statutes are very common at both the federal and state level, and it can hardly be said that in every instance they are a consequence of poor research or inept drafting. Drafting a clear criminal statute and still ensuring that in no instance could it cover conduct embraced within any existing criminal statute in that jurisdiction can be a formidable task. (This fact alone may make courts somewhat reluctant to find overlap per se unconstitutional, although the consequence of such a finding, limiting punishment to that under the lesser of the two statutes until such time as the legislature decides what to do about the now-identified overlap, is hardly a cause for alarm.) Moreover, in the overlap scheme the two statutes will at least sometimes assist the prosecutor in deciding how to exercise his charging discretion. (Footnotes omitted.)

The Utah Supreme Court has adopted this position. See State v. Williams, 175 P.3d 1029 (2007).

¶88  For the reasons set forth, I dissent.

3